H. W. TRACY, Respondent, v. UNION IRON WORKS, Appellant.

Kansas City Court of Appeals, February 20, 1888.

1. CONTRACT OF LEASE—VERBAL EVIDENCE TO CONTRADICT NOT AD-MISSIBLE—EXCEPTIONS TO RULE NOT APPLICABLE HERE—CASE ADJUDGED.—The general rule is, that verbal evidence cannot be admitted to contradict, add to, subtract from, or vary a written instrument. And if the case of a verbal agreement collateral to the written contract, and the case of an acceptance of a written contract by reason and on account of the verbal agreement, are exceptions to the rule, the rule so modified is not applicable to the facts of this case. (PHILIPS, P. J., dissents).

2. CASE CERTIFIED TO SUPREME COURT—CASE ADJUDGED.—PHILIPS, P. J., being of opinion that the decision in this case is in conflict with the opinion of the Supreme Court of this state in *Brown v. Bowen*, 90 Mo. 185, this case is certified to the Supreme Court.

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Affirmed.*

*Case certified to Supreme Court.*

Statement of case by the court.

This is an action to recover rent alleged to be due on a written contract of lease. The lease was for one year, from May 1, 1884, at an annual rent of one thousand dollars, payable in monthly instalments. This action is to recover for the last six months of the year.

The written contract is as follows: "This article of agreement witnesseth: That H. W. Tracy has this day rented to the Union Iron Works Company, of Decatur, Illinois, in the present condition thereof, the upper story of his business-house, known as 1305, 1307, and 1309, West Twelfth street, Kansas City, Missouri, said company to have the use of elevator and platform

in common with the other tenants of building, and to pay their fair proportion of water rates for same, and other uses about the house; also office, deskroom, and space for sample machine on first floor, for the period of one year from the first day of May, 1884, on the following terms and conditions, to-wit:

"For the use and rent thereof, the said Iron Works Company hereby promise to pay said H. W. Tracy, or to his order, one thousand dollars per year for the whole time above stated, and to pay the same monthly on the first of each month; that they will not sublet or allow any other tenant to come in with or under them without the consent of the said H. W. Tracy; that they will repair all injuries or damages done to the premises during their occupancy, or pay for the same; that all of their property, whether subject to legal exemption or not, shall be bound and subject to the payment of the rents and damages thereof; that they will take good care of the building and premises, and keep them free from filth, from danger of fire, or any nuisance, and protect and defend the said H. W. Tracy from all charges for such; that the house and premises shall be fairly treated, kept clean and left so; that in default of the payment of any monthly instalment of rent for ten days after the same is due, they will, at the request of the said H. W. Tracy, quit and render to him the peaceable possession thereof, but for this cause the obligation to pay shall not cease; and finally, at the end of their term, they will surrender to said H. W. Tracy, his heirs or assigns, the peaceable possession of the said house and premises, with all the keys, bolts, latches and repairs, if any, in as good condition as they received the same, the usual wear and use and providential destruction excepted. In case of any accident that may occur to the elevator, the party at fault for same shall pay for all costs of repairing made necessary by such accident."

The answer, after admitting that defendant is a cor-

poration, and the execution of the written lease, made the following plea:

" 3.    The defendant, for further answer and counter-claim, states that at the time of the execution of the lease sued on, and ever since, the defendant was engaged in the manufacture and sale of heavy engines and agricultural machinery of various kinds, requiring large storerooms and warehouses, and such as are provided with railroad switch-track facilities for the proper, expeditious, and economical shipping and transferring of its goods ; that the entire character of the defendant's business and operations were well known to plaintiff ; and previous to, and at the time of the execution, as alleged, this defendant so informed plaintiff about the necessities and requirements as above for its business, and informed him that proper and adequate switch-track facilities were an indispensable necessity to the premises to be occupied by it.

"That said plaintiff, being so informed, agreed, as an inducement to the execution of the lease, and as a part of the consideration for the leasing of said premises described by this defendant, that he would construct and cause to be laid, at his own expense, a suitable switch track in the rear of, or along the side of, said premises, so that cars might be run and operated up to and along said building.

"That, at the time of the execution of the lease herein, it was verbally agreed by said plaintiff that he would cause to be laid and constructed in a short time, at his own expense, a proper and sufficient switch track leading to said premises for the operation of cars thereon ; that said stipulation and agreement were intended to be and should have been inserted in said lease, but that the same was purposely omitted by the fraudulent and deceptive inducements and representations of this plaintiff, and that defendant was induced to sign and execute said lease by the fraudulent promises and representations of this plaintiff, and that defendant was induced to sign and execute said lease by the fraudulent

promises and representations of plaintiff that he would comply with and perform this part of his agreement as if it were in said lease contained, and that the same was unnecessary to be inserted in said lease, as he would always do what he promised verbally, as if in writing; that, upon these considerations and inducements, this defendant was induced to sign said contract of leasing; that defendant, by its agents and servants, often demanded of said plaintiff to perform his agreement and construct said switch track as alleged, but that plaintiff refused to put in said track or any part of same; that, by reason of such failure to perform this part of said agreement, this defendant was compelled to leave said building and premises and procure other buildings and premises suited to the proper conduct of its business; that it was put to great inconvenience, expense, and delay by having to pay large drayage accounts and hauling expenses for the want of said switch tracks, as agreed to be put in by plaintiff; that it was put to large expense in moving its effects to other suitable premises, all in the sum of one thousand dollars. Wherefore, defendant asks judgment for one thousand dollars."

The issue at the trial was as to this matter of defence.

The defendant's evidence tended to show the facts respecting the importance of the switch facilities as stated in the answer, and that this fact was made known to plaintiff during the negotiation for the lease. The plaintiff stated to the defendant's agent, who was conducting the negotiations for defendant, that it was not necessary to put such stipulation in the written contract, as he would have the switch ready by the time the defendant wanted it for its first carload of machinery, and that his word was as good as his bond; and that, accordingly, the defendant was induced to execute the written contract in reliance upon this assurance. The lease was drawn up by plaintiff, and forwarded to the company, at its headquarters in the city of Decatur, Illinois, for execution. The evidence was that, on in-

spection of the contract, as sent by plaintiff to defendant, the words, "also office, deskroom, and space for sample machine on first floor," were inserted by defendant before executing the lease ; and further, that, before the execution thereof, the company's executive officer asked its agent about the switch facilities, and why it was not inserted in the lease, whereat the agent stated the reason as before given. Upon this state of facts, the company signed the lease. Defendant took possession of the premises, and in about two weeks its first consignment of machinery arrived, but the railroad switch was not built as agreed. Plaintiff again assured defendant he would soon have it in. These assurances were, from time to time, repeated, until half the term had expired, without performance on the part of plaintiff, whereat defendant claimed that the absence of the switch so materially retarded the proper carrying on of its business that it could not longer, without great loss, occupy the building, and accordingly abandoned the same, and secured another building in the vicinity. Evidence was given on the part of defendant as to the amount of damages sustained by it on account of the failure to build said switch.

On the conclusion of the defendant's evidence, the court sustained a demurrer thereto, and directed the jury to find for the plaintiff the amount of the six months' rental as per written lease. Defendant has appealed.

ALBERT YOUNG and W. A. ALDERSON, for the appellant.

I.   The court erred in its instruction to the jury to find a verdict for the plaintiff, and the verdict and judgment are against the law, and contrary to the evidence as offered by defendant to support its counter-claim.

II.   Though all anterior and contemporaneous agreements are presumed to be merged in a contract when reduced to writing ; yet this rule does not include fraudulent misrepresentations made for the purpose of

inducing a party to execute a contract, and as to matters and conditions precedent which go to the consideration of the signing of such instrument.  Also a verbal agreement, which is collateral to a lease of writing, and a part of the consideration, may be shown in evidence.  The above rule is stated by Wharton, in his treatise on Evidence, as follows:  "Fraud, employed by one party to obtain the assent of the other party, may always, as we have also seen, be shown for the purpose of impeaching the contract.  But a further step may be taken, where it is shown that, before the execution of a contract, it was agreed, as a part of the consideration of the contract, that it should be essentially modified in its operation. Supposing, in such case, facts amounting to express or constructive fraud to be shown, the court will reform such a contract so as to make it what was proposed by the parties ; and the remedies thus given in chancery will be applied by common-law courts administering equity through common-law forms," etc.  2 Wharton's Law of Evid., sec. 1019 ; Stephen's Digest of Evid. 104 ; Bigelow on Fraud, 487 ; *Gooch v. Connor*, 8 Mo. 391 ; *Liebke v. Methudy*, 14 Mo. App. 65 ; *Landman v. Ingram*, 49 Mo. 212 ; *Murray v. Dake*, 46 Cal. 644 ; *Isenhoot v. Chamberlain*, 59 Cal. 630 ; *Prentiss v. Russ*, 16 Me. 30 ; *Boyce v. Grundy*, 3 Peters, 210–219 ; *Thomas v. Beebe*, 25 N. Y. 244 ; *Renshaw v. Gans,* 7 Barr, 117 ; *Taylor v. Gilman*, 25 Vt. 412 ; *Cogers v. McGee*, 2 Bibb [Ky.] 321 ; *Chapin v. Dobsons*, 78 N. Y. 74 ; *Cozzin v. Whitaker*, 3 S. & P. [Ala.] 322 ; *Erskine v. Adeane*, 8 L. R. Ch. App. 756 ; *Angell v. Duke*, 10 Q. B. 174 ; *Morgan v. Griffith*, L. R. 6 Ex. 70,

III.  In *Gooch v. Connor, supra*, Judge Napton uses the following language, which expressly meets the case at bar :  "The general principle is well established that, where a contract is made, all anterior and contemporaneous stipulations and representations are merged in the written instrument.  This rule has, however, not been understood to exclude fraudulent misrepresentations introduced by a party desiring to avoid the con-

tract, or seeking redress for injuries sustained in consequence of such misrepresentations; nor is there any rule of evidence which would prevent a defendant from availing himself of such fraudulent misrepresentations where the contract induced by the malpractices of plaintiff, is sought to be enforced." In the case of *Liebke v. Methudy, supra*, which was a suit for breach of contract similar in its nature to the case at bar, Judge Lewis says: "An elementary writer says, citing many authorities: 'But if there be a fraudulent representation by the vendor, going to the essence of the contract—and on the faith of which the contract is made—the vendee may, by an action on the case, or by bill in equity, recover upon proof of such representations, although they be not embodied in the written contract.'" Story on Sales, sec. 360. The petition in this case does not ask for a recovery of damages for a fraudulent representation. Considering, however, that our code does not contemplate any statement of legal conclusions, and that, although the petition may state such conclusions improperly, or may fail to ask for the proper relief, the court will grant whatever remedy may be appropriate to the facts stated, we incline to the opinion that, even as the petition stands, the rejected testimony might have been properly admitted for the purpose of a recovery upon the ground last stated. In any event we think that the ends of justice would have been better subserved, and no controlling technical rule would have been violated if the testimony offered had been permitted to go to the jury."

IV. Whenever there are facts in dispute, or there are inferences to be drawn from facts proven, though the evidence be very slight, yet if there is some evidence, the plaintiff has the right to have it submitted to the jury. Very slight circumstances, when combined, may establish deceit and fraud. The proof need not be direct or positive, but may be gathered from all the circumstances. It is the province of the jury alone

to determine this. *Buesching v. Gas Co.*, 73 Mo. 219; *Kelly v. Railroad*, 70 Mo. 604; *Blewett v. Railroad*, 72 Mo. 583; *Walsh v. Morse*, 80 Mo. 568; *Jackson v. Hardin*, 83 Mo. 175–86; *Dulaney v. Rogers*, 64 Mo. 201; *Brown v. Railroad*, 50 Mo. 461; *Kearne v. Keathe*, 63 Mo. 84; *Massey v. Young*, 73 Mo. 273; *Bank v. York*, 89 Mo. 369; *Gooch v. Connor*, 8 Mo. 285; *Liebke v. Methudy*, 14 Mo. App. 65. We submit that the rulings of the trial court in this case violated well-settled principles of jurisprudence, and the unanimous rule of decision of the supreme and appellate courts in this state.

WARNER, DEAN & HAGERMAN, for the respondent.

I. The proposition of law which determines this case has been announced in several decisions made by the Supreme Court and courts of appeals of this state, and in two of them the facts are almost precisely similar to those which underlie this action. The first of the two referred to is *Pearson v. Carson*, 69 Mo. 550. The other case referred to is *Gray v. Gaff*, 8 Mo. App. 329. See, also, *Walker v. Engler*, 30 Mo. 130; *Higgins v. Cartwright*, 25 Mo. App. 610; *Smith v. Thomas*, 29 Mo. 307; *Jones v. Shaw*, 67 Mo. 667; *Rodney v. Wilson*, 67 Mo. 123; *Helmrick v. Gehrke*, 56 Mo. 79; *Chrisman v. Hodges*, 75 Mo. 413.

II. The lease made to the defendant company provides in specific language that so much of the premises as is included therein are demised "in the present condition thereof;" and "for the use and rent thereof" a specified sum is stipulated to be paid as rent. The plaintiff does not agree to put in a switch, nor does the defendant agree to pay him for one. If the evidence offered is competent, would it not have been equally competent to have shown that plaintiff was not only to build a switch and furnish switching facilities for defendant, but was, in addition thereto, to build a warehouse on the premises to which the building was attached, for the storage of defendant's heavy machin-

ery, or, in default thereof, to pay for such storage at some other warehouse, in order to save the removal of such machinery to the third floor of the building demised? Or, that the basement and first floor of the building were to be set apart for the special use of the defendant company for the storage of such machinery? It were only necessary to plead that these promises were the inducing causes of the lease, so far as the defendant is concerned, and it relied on them, and such promises were fraudulently made. The statement in the answer is, that "the plaintiff verbally agreed that he would cause to be laid and constructed, within a short time, at his own expense, a proper and sufficient switch track," and it is the breach of this promise that is complained of, and is sought to be shown by the evidence. The claim is, that evidence may be received of previous oral stipulations which will destroy a written agreement between the parties, complete within itself, because of failure of the party making such stipulations to comply with them. If this be true, then every oral promise which directly contradicts the written contract of the parties, or which will engraft new stipulations upon the written contract, will be received in evidence because the breach of such promises indicates a fraudulent intent in the party making them, and the party in whose favor they are made is defrauded in relying on them. This would be necessarily true of every oral promise contradicting or changing a written agreement, and in no instance could it be executed, and a contract in writing would amount to nothing. This is the argument that is made to take the case outside of the general rule of law that has been so frequently announced by the decisions of the courts of this state, "that antecedent or contemporaneous verbal stipulations are inadmissible to contradict or vary the terms of a written instrument."

HALL, J.—I think that this case is exactly parallel with the case of *Pearson v. Carson*, 69 Mo. 550, and is consequently controlled by it, unless it has been over-

ruled by the Supreme Court, and of this there is no pretense.

It is conceded by counsel for appellant that the general rule is, that verbal evidence "cannot be admitted to contradict, add to, subtract from, or vary a written instrument" (language of Phillips in his work on Evidence, approved in *Bruce v. Beck*, 43 Mo. 279), but they contend that the general rule does not apply to this case on two grounds: (1) That the verbal agreement in this case was collateral to the written lease, and not a part of it; and (2) that the written lease was accepted by defendant by reason and on account of the verbal agreement, and that to permit the plaintiff to take advantage of the omission of the said agreement from the lease would be to allow him to perpetrate a fraud upon the defendant.

The facts in the case of *Pearson v. Carson* were stronger in favor of the position that the verbal agreement was a distinct and independent agreement than are the facts in this case. That action was on the following contract:

"J. W. Carson has rented of R. W. Pearson one hundred and sixty acres of pasture land, on the Pearson farm, for the sum of ninety-five dollars—one-half to be paid on the fifteenth day of August, 1875, the balance to be paid on the first day of November, 1875. Said Pearson acknowledges the receipt of ten dollars on payment.

"Signed.                    J. W. CARSON.
                            "R. W. PEARSON."

The defence made is thus stated in the opinion of the court: "As a defence to this action, which was for the last instalment, which had not been paid, the defendant proposed to prove that he was the owner of a lot of Texas cattle, and rented this pasture to feed them during the feeding season; that plaintiff agreed to keep up and maintain the fence around the pasture and to look after said cattle; that said lands were not fenced as

represented, and the fences were not kept up, except for about four weeks, and his cattle strayed away, and he was unable to keep them in said pasture." The trial court refused to allow the evidence, and in so doing was sustained by the Supreme Court. The court said : "In effect, the evidence would engraft on the written contract two very material additions to it, and impose on the owner two obligations which the contract does not impose, to-wit, to keep the fences in repair and look after the cattle." The case of *VanSluddiford v. Hazlett*, 56 Mo. 322, and *Life Association of America v. Cravens*, 60 Mo. 388, are unlike the present, and so are the cases of *Moss v. Green*, 41 Mo. 390, and *Rollins v. Claybrook*, 22 Mo. 405. "The written contract in the present case is complete, and to introduce the provisions proposed, relating as they do to the same subject-matter, would add to and vary the written agreement."

In *Smith v. Williams*, 1 Murphy, 430, Judge Taylor observes : "The first reflection that occurs to the mind upon the statement of the question, independent of any technical rules, is, that the parties, by making a written memorial of their transaction, have impliedly agreed that, in the event of any future misunderstanding, that writing shall be referred to as the proof of their act and intention ; that such obligations as arise from the paper by such construction, or legal intendment, shall be valid and compulsory on them, but that they will not subject themselves to any stipulations beyond the contract, because if they meant to be bound by any such, they might have added them to the writing, and thus have given them a clearness, a force, and a direction which they could not have by being intrusted to the memory of a witness." This remark by Judge Taylor, clear and explicit as it is, might have been written as entirely applicable to the case we now have under consideration. The plaintiff and defendant both went to the farm of plaintiff, and examined the pasture. They returned to Mexico, twelve miles off, and defendant himself there

wrote this contract. Nothing is said in it about keeping up the fences by plaintiff, or about his duty to look after the stock. Whether the plaintiff would have let this pasture for ninety-five dollars with these material additional burthens on him, we are left to conjecture, and must rely on the verbal statement of either the defendant or the plaintiff, and, as Judge Taylor well says, "the object of the paper writing was, in case of subsequent misunderstandings, that it alone should show what their acts and intentions were."

As to the first reason relied upon by counsel for appellant in support of their position, it was added: "In *Lane v. Price,* 5 Mo. 101, the precise question was decided by this court. Judge McGirk, in that case, conceded the correctness of the general principles on which the case was decided, but denied their applicability to the facts of that case, on the ground that the parol contract was a substantive and distinct one, in nowise changing or enlarging the written contract. In this case it is clear that the parol evidence offered makes a material addition to the written contract. It requires the owner of the pasture to keep up the fences and to look after the stock; both of these requirements recognizing a lease, but a lease upon terms nowhere indicated in the written contract, and materially added to it." This language conclusively disposes of the position that the verbal agreement in this case is a distinct agreement, collateral to, and not a part of, the lease.

As to the question of fraud, the court said: "It is not pretended that any fraud was practiced by the proprietor, the plaintiff, since the defendant visited the farm, and could see for himself the condition of the fences, as well as the plaintiff, and he drew up the contract himself, and seemed to think that any obligation of plaintiff on that subject was unnecessary." This would seem to dispose of the defence in this case based upon fraud. But it is only fair to admit that the defence was not presented to, or considered by, the court

in the light in which it is so clearly and forcibly presented in this case. The defence, however, is not maintainable when considered as an original proposition, in my opinion. It is not sought to avoid the written lease because of any fraud or mistake in omitting the verbal contract or stipulation from it; but it is sought to treat the verbal contract as a part of the lease, notwithstanding it was omitted therefrom. It is sought to do this on the principle of estoppel. It is argued that, because the defendant was induced to execute the lease with the verbal stipulation omitted from it by the plaintiff's statement to the effect that it would be regarded as a part of the lease as much as if it were written in it, then it is a part of the lease, for the reason that otherwise the plaintiff would be permitted to perpetrate a fraud upon the defendant. In short, the position is taken that since the plaintiff induced the defendant to execute the written lease by the representation that the oral stipulation would be deemed a part of the lease, the plaintiff is estopped from claiming that the stipulation is not a part of the lease. The cases cited by counsel from Pennsylvania and California support this position. But I am constrained to differ from them. This very question arose in *Ins. Co. v. Mowry*, 96 U. S. 546, and was decided contrary to the view expressed in these cases. That was an action on a policy of insurance. The court, by Field, J., said: "By the express condition of the policy, the liability of the company was released upon the failure of the insured to pay the premium when it matured; and the plaintiff could not recover, unless the force of this condition could in some way be overcome. He sought to overcome it, by showing that the agent, who induced him to apply for the policy, represented to him, in answer to suggestions, that he might not be informed when to pay the premiums, that the company would notify him in season to pay them, and that he need not give himself any uneasiness on that subject; that no such notification was

given him before the maturity of the second premium, and for that reason he did not pay it at the time required. This representation before the policy was issued, it was contended in the court below, and in this court, constituted an estoppel upon the company against insisting upon the forfeiture of the policy. But to this position there is an obvious and complete answer. All previous verbal arrangements were merged in the written agreement. The understanding of the parties as to the amount of the insurance, the conditions upon which it should be payable, and the premium to be paid, was there expressed, for the very purpose of avoiding any controversy or question respecting them. The entire engagement of the parties, with all the conditions upon which its fulfilment could be claimed, must be conclusively presumed to be there stated. If, by inadvertence or mistake, provisions other than those intended were inserted, or stipulated provisions were omitted, the parties could have had recourse for a correction of the agreement to a court of equity, which is competent to give all needed relief in such cases. But, until thus corrected, the policy must be taken as expressing the final understanding of the assured and of the insurance company. The previous representation of the agent could in no respect operate as an estoppel against the company. Apart from the circumstance that the policy subsequently issued alone expressed its contract, an estoppel from representations can seldom arise, except where the representation relates to a matter of fact, to a present or past state of things. If the representation relates to something to be afterwards brought into existence, it will amount only to a declaration of intention or of opinion, liable to modification or abandonment upon a change of circumstances of which neither party can have any certain knowledge. The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made

to influence others, and by which they have been induced to act. An estoppel cannot arise, from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. The doctrine of estoppel is applied with respect to representations of a party to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party, who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against declared intention of abandonment. But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing. The doctrine carried to the extent for which the assured contends in this case would subvert the salutary rule, that the written contract must prevail over previous verbal arrangements, and open the door to all the evils which that rule was intended to prevent."

I have quoted from the foregoing opinion at such length, because it furnishes a complete answer to the argument in support of the contrary view, and also because this court has followed that opinion in *Greenwood v. Ins. Co.*, 27 Mo. App. 401.

In *White v. Ashton*, 51 N. Y. 285, the same doctrine is announced. In answer to the argument in support of the contrary view, the court says: "This argument is plausible, but it is not sound. Its allowance would overthrow the well-established rule, that the writing must prevail over any and all previous parol agreements;

it is a common, almost an inevitable result, that the party who relies upon a parol understanding, in hostility to, or unsupported by, the written contract, suffers damage. It is the fact existing in nearly every one of that class of cases, that the party who claims the rigor of the writing inflicts an injury upon his confiding neighbor who trusts to a verbal assurance. While we lament that a higher standard of honor does not prevail, we must stand by the well-settled rules of law. In this case the carrier had the right to look into his bill of lading, and be governed by what he there should read. We do not know what necessities operated to change his avowed intention of taking the inner route, nor should we be justified in canvassing them. It is enough that he chose to stand by his writing. I am not aware of any principle of estoppel which can be applied to the case. An estoppel *in pais* is sometimes invoked to exclude a party from showing the truth, when by his acts or declarations he has induced another to act in a particular manner. In such a case he will not be permitted to deny the truth of his admission if the consequence would be an injury to such other person. I think it will be found that the present case does not fall within this principle. Here was a promise simply to do a given thing, allowing the utmost force to the evidence and the offers, to-wit, to transport the goods by the inner route. There was no assertion of an existing fact, the truth of which the party now wishes to disprove. He failed to perform his verbal agreement. Is there any case which, upon the principle of estoppel, will prohibit his taking advantage of the rule that this agreement was merged in writing?" After a review of the authorities, it is added: "None of them cover the present case or give countenance to the idea that the principle is to subvert that other principle, that all prior or contemporaneous parol agreements are absorbed in the writing by which the contract is consummated."

The rule on this subject is thus stated by Mr. Bigelow, in his work on Estoppel: "So, too, it may be

broadly stated that a parol promise, made in conjunction with, and intended to constitute, one of the terms of a written contract, but not incorporated into the written instrument, cannot operate by estoppel; though cases may arise where *fraudulent* promises of the kind would be entitled to the consideration of the courts." Big. Estop. (3 Ed.) 489. Not wishing to draw out this opinion to greater length, I content myself with saying that the exception stated by Mr. Bigelow, if indeed it be a valid exception, does not, as the authorities supporting it show, include this case.

The verbal stipulation or agreement relied on by defendant must be deemed to be merged in the written lease. The defence set up was not maintainable.

The judgment of the circuit court should be affirmed. With the concurrence of Ellison, J., it is so ordered. Philips, P. J., dissents.

Philips, P. J., being of opinion that the decision is in conflict with the opinion of the Supreme Court in *Brown v. Bowen*, 90 Mo. 185, this case is certified to the Supreme Court.

Philips, P. J., Dissenting.—I am unable to concur in the opinion of the majority of the court. The new matter pleaded in the answer properly belongs to that character of anterior and contemporaneous agreements and promises on the part of the landlord, which show a collateral promise, or express assurance by the landlord to have done a certain other thing, not named in the writing, but collateral to the thing demised, whereby the tenant is induced to execute the written contract without the inducing matter being incorporated in it, and without which assurance and promise the tenant would not have signed the lease. Such a representation, unfulfilled on the part of the landlord, would give him an unconscionable advantage, which no court ought to suffer.

I concede that the case of *Pearson v. Carter*, if viewed solely in the light of the mere words employed

in it, regardless of the state of the pleadings, and the state of the facts, gives strong support to the position of the majority. It is to be observed that in none of the cases decided by our Supreme Court, touching this question, was the distinct defence here interposed set up ; but the defence relied upon was merely that a part of the contract was omitted from the writing ; and the thing omitted was either a *condition* of the contract, or appurtenant to the thing demised ; while here the thing omitted from the contract was collateral, essentially, to the thing demised, and the tenant was induced to so omit it from the writing upon the express assurance of the landlord that it was not necessary to be inserted, as it would be done without it. The railroad switch in this case was independent of the house let, was not appurtenant thereto. The contract respecting the lease of the house was complete within itself. This is not to make that contract conditional, as in the case of *Lane v. Price,* 5 Mo. 110 ; nor to add any terms thereto inconsistent with the written stipulations, or contradictory of them. It is further pleaded as a fraudulent assurance, whereby defendant was deceived into doing that which he would not have done but for the deception ; and the fraud is to be found in the act of the landlord repudiating his representation after he has thus inveigled the tenant into the writing. I hold that the decided weight of authority is, that it is the province of the courts of equity and law to relieve the tenant against such wrong and fraud. And if our court holds the contrary, it is singular in its protection of fraud, deceit, and injustice.

In *Morgan v. Griffith,* 6 L. R. (Crt. of Exch.) 70, the tenant declined to sign the lease for a farm on account of the land being overrun by rabbits. The landlord declined to put in the lease a stipulation binding him to destroy the rabbits ; but verbally promised the lessee that he would destroy them. Thereupon the tenant executed the written lease. The landlord, failing to keep the promise, was held liable to an action for damages. The court said : "The verbal agreement

was entirely collateral to the lease, and was founded on a good consideration. The plaintiff,, unless the promise to destroy the rabbits had been given, would not have signed the lease, and a court of equity would not have compelled him to do so, or only on the terms of the defendant performing his undertaking. * * * The verbal agreement, although it does not affect the mode of enjoyment of the land demised, is, I think, purely collateral to the lease. It was on the basis of its being performed that the lease was signed by the plaintiff, and it does not appear to me to contain any terms which conflict with the written contract."

In the later case of *Erskine v. Adeane*, 8 L. R. (Ch. App. Cases) 756, a farmer, being in negotiation for a lease of a farm, declined to take it on account of the quantity of game on it. The lessor promised that he would kill down the game, and not let the shooting ; but refused to insert this promise in the lease. Upon this verbal assurance the tenant signed the lease. Action for damages predicated of the verbal promise. Sir James, L. J., observed that he was unable to distinguish this case, on principle, from that of *Morgan v. Griffith*, *supra*. Sir G. Mellish, L. J., said : "No doubt, as a rule of law, if parties enter into negotiations affecting the terms of a bargain, and afterwards reduce it to writing, verbal evidence will not be permitted to introduce additional terms into the agreement ; but, nevertheless, what is called a collateral agreement for a lease or for any other deed under seal, may be made in consideration of one of the parties executing that deed, unless, of course, the stipulation contradicts the terms of the deed itself. I quite agree that an agreement of this kind is to be rather closely watched, and that we should not admit it without seeing clearly that it is substantially proved, etc. * * * When it has been proved that Mr. Bennett, having found a quantity of game upon the farm, said that it was impossible that he could take it with that quantity of game on it, when * * * it is quite plain that Mr. Adeane said that Mr.

Bennett need not be afraid of that, etc. ; and when the lease was executed on the faith of that agreement, and upon these representations so made, it would be contrary to the ordinary rules of justice if the tenant afterwards have no remedy. * * * As to the amount of damages, that is a matter to be inquired into; all we have to say now is, that this is an agreement that is binding in point of law, and assuming that there has been damage sustained, that Mr. Bennett is entitled to be paid for it out of Mr. Adeane's estate."

This doctrine is emphasized in Coal Co. v. McShain, 75 Pa. St. 238. The written agreement stipulated for the transportation of ten thousand tons of coal, at such time as desired, at $1.30 per ton. This was the written contract. On the trial the defendant sought to prove that the verbal agreement was, that McShain should furnish this coal before a certain date, the first of October, 1868 ; that when the written memorandum was presented by the company to McShain to sign, he called attention to the fact that it omitted the agreement and understanding as to the time within which the coal was to be furnished, there being a great advantage to the shipper as to the right to deliver it within that time. The plaintiff thereat remarked: "Of course, that is understood;" thereupon McShain, with that understanding and upon that assurance, signed the paper. The court say : "It is certainly permissible to give evidence of a verbal promise made by one of the parties, at the time of making a written contract, where such promise was used as an inducement to obtain the execution thereof (citing Campbell v. McCleneshan, 7 S. & R. 171). This rule," say the court, "is put upon the ground that the attempt afterwards to take advantage of the omission from the contract, of such promise, is a fraud upon the party who was induced to execute it upon such promise, and hence he will be permitted to show the truth of the matter. * * * To say that this (written contract) might be enforced without regard to the express parol stipulation, under which it was signed,

would be to disregard long and well-settled legal princi-
ples, as well as the plainest demands of common
honesty.''

And in *Shurghert v. Moore*, 78 Pa. St. 464, it was
held admissible, in an action by a landlord for breach of
the tenant's contract of lease reduced to writing, for the
tenant to prove that he was induced to sign the instru-
ment of writing by reason of the landlord's verbal prom-
ise that he would build a barn on the farm before
harvest.

This rule is recognized in California.    In *Murray v.
Dake*, 46 Cal. 644, the plaintiff leased of defendant a
storehouse.    Contract in writing, which called for ''all
that certain brick building situate, etc., together with
the lot on which the same stands, and the rear yard to
the depth of seventy feet.''    The building then had but
one story.    During the term of this lease the landlord
added a second story to this building, and made an out-
side entrance to the same.    Refusing possession of this
second story to the lessee, the latter brought ejectment
therefor.    The defendant, at the trial, against the objec-
tion of the plaintiff, was permitted to prove that, during
the negotiations for the lease, it was understood that
only the building as it then was, was to be embraced in
the lease ; that defendant was to have the right to erect
and use the second story ; that one of the lessees drew
up, or caused to be drawn up, the written lease, and
when it was presented to the lessor for his signature he
objected to signing it unless it contained the agreement
about the second story.    He was answered by the lessees
that this would make no difference whether or not this
reservation was made in the lease, as it was so under-
stood, and defendant might erect the second story ; that
upon these assurances the defendant was induced to sign
the contract.

The court held the proof admissible, placing its
opinion upon the broad equitable ground, that ''to per-
mit the plaintiff to avail' himself of this lease, in
violation of his express agreement, to recover the prop-

erty in controversy, would be to uphold and sanction fraud and bad faith;" quoting from *Coger's Ex'r v. McGee*, 2 Bibb, 321: "For a party either to produce a mistake, or prevent it from being rectified, under the declaration that he would observe the understanding of the parties as verbally expressed and requested to be inserted in the writing, and afterwards attempt an advantage from its omission in the writing, is fraudulent, and ought to be relieved against." Also, from *Parks v. Chadwick*, 8 Watts & Serg. 96: "It is as much a fraud to obtain a paper for one purpose, and use it for a different and unfair purpose, as to obtain it by fraudulent statements." So it is said in *Renshaw v. Gans*, 7 Barr, 117: "All the cases show that to pave the way for the reception of oral declarations, it is not necessary to prove a party was actuated by a fraudulent intention at the time of the execution of the writing. His original object may have been perfectly honest and upright; but if, to procure an unfair advantage to himself, he subsequently deny the parol qualifications of the written contract, it is such a fraud as will, under the rules, operate to let in evidence of the real intent and final conclusion of the contractors." To the same purport are the cases of *Taylor v. Gilmen*, 25 Vt. 412; *Bonney v. Morrell*, 57 Me. 368; *Bashor v. Forbes*, 36 Md. 154.

The observations of Mr. Justice Miller, in *Ins. Co. v. Wilkinson*, 13 Wall. 231, 232, commend themselves to my approval. After paying the highest tribute of praise to the general rule invoked by the respondent in this case, he observes: "But experience has shown that in reference to these very matters the rule is not perfect. * * * A rule of evidence adopted by the courts as a protection against fraud and false swearing, would, as was said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent, if there did not exist some authority to correct the universality of its application. It is upon this principle that courts of equity proceed in giving relief;

and though the courts, in a common-law action, may be more circumscribed in the freedom with which they inquire into the origin of written agreements, such an inquiry is not always forbidden by the mere fact that the party's name has been signed to the writing offered in evidence against him. * * * The principle is, that, where one party has, by his representations, or his conduct, induced the other party to a transaction to give him an advantage which it would be against equity and good conscience to assert, he would not, in a court of justice, be permitted to avail himself of that advantage. And although the cases to which the principle is to be applied are not as well settled as we could wish, the general doctrine is well understood, and is applied as well by the courts of law as equity, where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim."

The exception herein indicated to the general rule of the exclusive operation of the written contract, is recognized by Wharton on Evidence (vol. 2, secs. 928, 929, 931). And it is also clearly recognized by our Supreme Court, in the recent case of *Brown v. Bowen*, 90 Mo. 189, 190, in which Judge Sherwood distinctly says: "The rule which prohibits the introduction of parol contemporaneous evidence does not apply * * * where a distinct collateral contemporaneous agreement, independent of, and not varying, the written agreement, is offered in evidence, though it relates to the same subject-matter." And in support of this proposition, he cites the cases of *Bonney v. Morrill*, 57 Me. 368, and *Bashor v. Forbes* 36 Md. 154, which on examination will be found to maintain the doctrine of the English and American cases cited heretofore. If this case does not support the distinction I have attempted to make, judicial language is meaningless.

The claim in the majority opinion that it is sought to maintain this defence on "the principle of estoppel" is an entire misconception of the position

assumed by me. As a matter of course, the doctrine of estoppel is inapplicable ; it is not claimed that the plaintiff represented a state of facts as existing which did not exist. There is no claim that he induced the defendant to act upon the faith of such fact, as of a thing done, or existing. But the proposition is, that, as a part of the consideration of the tenant taking the lease, and signing the contract, the plaintiff promised to do something collateral thereto, but for which promise he would not have executed the contract, and that the plaintiff knowing this, and afterwards failing to perform the collateral undertaking, cannot enforce the consideration of the written contract without performing the other promise. The distinction is too clear to require elaboration.

The case of *Insurance Co. v. Mowry*, 96 U. S. 546, in no manner conflicts with the English authorities cited herein, or those from Pennsylvania and California. In that case the assured was seeking to evade a positive *condition, incorporated in the written contract,* by showing a parol contemporaneous agreement not to insist on the letter of the contract. The distinction between nullifying a positive written stipulation by a parol contemporaneous agreement or understanding, and asserting a right or liability based upon a collateral agreement not incorporated in the contract, by reason of plaintiff's assurance that the thing which was the inducement to the execution of the writing, would be done as part of the whole consideration, is too palpable to admit of debate. The defendant here declined to execute the written lease except upon the assurance made by plaintiff that this switch would be immediately built. To permit him, after thus luring the defendant into executing the writing, to take advantage of the omission of the collateral undertaking from the instrument, would be to allow him to perpetrate a fraud and wrong upon his confiding tenant. It would make the rule of convenience and safety invoked by the majority opinion an agent of injustice and oppression. This a court of

justice, where the case is clearly made out, should not permit. I am unwilling to become accessory to the wrong.