MINNESOTA THRESHER MANUFACTURING COMPANY, Appellant,
v. GRANT CITY LUMBER & HARDWARE COMPANY,
Respondent.

81  255
f83  507
81  255
85  108

### Kansas City Court of Appeals, October 30, 1899.

1. **Guaranty:** PAROL EVIDENCE: VARYING: INSTRUCTION. All prior and contemporaneous negotiations are merged in a written contract and no such negotiations can be admitted in evidence to add to or detract from, vary or modify, the terms of such contract, and an instruction based upon such parol evidence is erroneous.

2. ———: EVIDENCE VARYING: WRITTEN CONTRACT: PAROL CONTRACT. A contract of guaranty and the circumstances surrounding it are reviewed, and it is held that the written guaranty is not a part of a parol contract but that the whole contract was in writing.

3. ———: ———: PAROL CONSISTENT WITH WRITTEN. Where a contract is in parol and only a part of it reduced to writing, proof of the parol or unwritten part must be consistent with and not contradictory of the written.

Appeal from the Worth Circuit Court.—*Hon. P. C. Stepp,*
Judge.

REVERSED AND REMANDED.

*Harkless, O'Grady & Crysler* and *Lingenfelter & Hudson* for appellant.

(1)   It is a well settled proposition in this state that where a contract is complete in itself, as the guaranty on the back of this note is, parol testimony can not be introduced to contradict, vary or add to, and especially is this true where the parol testimony pertains to agreements claimed to have been made prior to reducing the contract to writing. Pearson v. Carson, 69 Mo. 550; Tracy v. Iron Works Co., 104 Mo. 193; West v. Waller, 51 S. W. Rep. 320.   (2)   Hence

under the evidence and the law as applied to this case, there was no testimony admissible, and if admissible, none that proved any agreement of any kind in reference to the guaranty that that was not conclusively merged in the guaranty contract afterwards made, and the court should have so instructed. The instruction given by the court of its own motion which sought to shift that question to the jury, was absolutely erroneous. (3) Any oral testimony tending to show that a guaranty was signed on any other conditions and any other understanding than is expressed on its face is wholly inadmissible. Tracy v. Iron Works, 104 Mo. 193.

*Kelso, Schooler & Kelso* for respondent.

(1) The rule that parol evidence is inadmissible to contradict or vary the terms of a written agreement, is elemental. But it is equally as well settled both by the text writers and decisions of all of the states, including our own, that the rule does not apply in cases where the original contract was verbal and entire and only a part of it reduced to writing. 1 Beach on Modern Law of Contracts, sec. 31 and notes; 1 Greenleaf on Evid., sec. 284a, and notes; 2 Parsons on Contracts [5 Ed.]. p. 553; Beagle v. Harby, 73 Hun. 310; Hutchins v. Hebbard, 34 N. Y. 24; Chapin v. Dobson, 78 N. Y. 74; Van Brunt v. Day, 81 N. Y. 251. The courts of this state have adopted and repeatedly announced the same doctrine. Rollins v. Claybrook, 22 Mo. 405; Moss v. Green, 41 Mo. 389; Newman v. Bank, 70 Mo. App. 141; Greening v. Steele, 122 Mo. 294; Brown v. Bowen, 90 Mo. 184; Lumber Co. v. Warner, 93 Mo. 374.

GILL, J.—In August, 1896, one Cook negotiated for and purchased from the plaintiff a threshing outfit. The business was conducted through Goodsill, Cook's relative, and who was the president and manager of the defendant Hardware Company at Grant City. The sale was concluded August 15,

1896, when a writing incorporating the terms of the contract was signed by the parties, and there was also executed by Cook to the machine company three promissory notes—one for $750 due December 1, 1896, one for a like amount due December 1, 1897, and one for $550 due December 1, 1898, all bearing 8 per cent interest from date. To secure these notes Cook also executed a chattel mortgage covering the machine as also what is called an "earnings contract," whereby he agreed to turn over to the company one-half the gross earnings of the thresher until the debt was paid. In addition to this, the plaintiff required, and the defendant by Goodsill, its president, signed, the following guaranty written on the back of the note maturing by its terms December 1, 1896:

"For value received I hereby guarantee the payment of the within note and interest three months after its maturity, or at any time thereafter, on demand of Minnesota Thresher Manufacturing Company, or order, hereby waiving notice, demand, protest, diligence in collecting and prejudice by renewals or extensions.

"Dated this 15th day of August, 1896.

"Grant City Lbr. & Hard. Co.

"A. G. Pt."

Cook made several payments on this note, aggregating about $190, but failing to pay the balance, plaintiff sued the defendant on the above guaranty.

In the trial of the case the circuit court, over plaintiff's objection, permitted Goodsill, defendant's manager, to testify, in effect, that a few days prior to the sale of the machine and the execution of the written contract, and prior to the execution of the Cook notes and defendant's written guaranty indorsed on the one first maturing, he (Goodsill) had a conversation with plaintiff's agent at Kansas City wherein it was understood that defendant should guaranty the payment of said first note but with the condition or understanding that

plaintiff should not call on said guarantor for the payment of said note until plaintiff had made every effort to collect whatever was coming to it on the earnings contract and should have first foreclosed the chattel mortgage on the threshing outfit.    And at the close of the evidence defendant asked and the court gave an instruction to the effect that if the jury found that the plaintiff and defendant entered into a verbal and entire contract by which the defendant as agent for the plaintiff was to sell to Cook the machine in question, was to take therefor Cook's notes, chattel mortgage and also an earnings contract by which Cook was to pay to plaintiff half the gross receipts from the machine to be applied on the payment of the notes, "and that by the further terms of said original verbal contract the defendant was to take said notes, chattel mortgage, earnings contract and the contract of guaranty of this defendant and deliver to the plaintiff, and that the said plaintiff was to give careful and close attention to the collection of the one-half of the earnings of said machinery, and to apply first, the earnings to the discharge of the note sued on in this case, and if at the maturity of said note the plaintiff had not collected a sufficient amount on said earnings contract to fully discharge the note, then the plaintiff was to sell said machinery under said chattel mortgage to satisfy the balance due upon said note, and the defendant was only to be liable to pay upon said contract of guaranty whatever sum or balance there might be found to be due upon said note after applying the proceeds of said earnings contract, and selling said machinery under said chattel mortgage, and if the jury further believe that the defendant fully complied with all the terms of said original verbal contract on its part, and that the plaintiff has failed, refused or neglected to collect or apply the earnings of said machine upon said notes or to sell said machinery under said chattel mortgage and apply the proceeds thereof to the discharge of said note, then the jury are instructed that the plaintiff can not recover in this case, and they must find for the defendant."

Following such evidence and instructions the jury returned a verdict for defendant and from a judgment in accordance therewith plaintiff appealed.

It is an old and well established rule that no contemporaneous or antecedent verbal evidence can be used to add to, detract from, vary or modify the terms of a written contract. All prior or contemporaneous negotiations are treated as having been merged into the writing then or subsequently solemnly entered into by the parties. The very purpose of the writing is to make a lasting and permanent testimonial of the terms by which the parties intend to be bound—avoiding in the future all misunderstandings, defects of "slippery memory" or temptations to false swearing. In this case there seems to have been a clear departure from this salutary rule of evidence. The action is based on a complete written contract, clear and explicit. The instrument, quoted in the foregoing statement, is in no sense clothed in dubious language. On its face it purports to be an absolute, unequivocal undertaking, whereby the defendant promised to stand good for the default of Cook, the maker of the note. Nor is there any question as to the sufficiency of the consideration. For value received the defendant "hereby guarantees the payment of the within note and interest three months after its maturity, or at any time thereafter, on demand of the Minnesota Thresher Manufacturing Company or order, hereby waiving notice, demand, protest, *diligence in collecting*," etc.

By the terms of this contract defendant pledged itself to answer for the default of the maker of the note. It agreed, absolutely and without condition, to pay the note and interest at any time three months after its maturity on demand of the plaintiff—waiving even any want of diligence on the part of the payee or holder in seeking its collection of the maker. But, under sanction of the trial court, the defendant introduced oral evidence to vary and contradict the express terms of the contract; was allowed to prove that prior to the

execution of the instrument the parties had certain verbal negotiations of quite a different character; that, instead of agreeing to pay the debt absolutely after the expiration of three months past due and without reference to any diligence in collecting it from the maker (as clearly declared in the writing), it was understood and agreed that defendant should not be required to pay the note, or balance due thereon, *except on condition* that the plaintiff had diligently sought and exhausted every relief on the earnings contract and had foreclosed the chattel mortgage on the machine. If this was not an instance of seeking to vary and modify the terms of a written contract by proof of antecedent verbal negotiations then it is difficult to conceive of one.

It is contended, however, by the learned counsel for defendant that the contract was verbal and entire and that the giving of the written guaranty was only a part thereof— that this writing was made as part performance of the main contract, etc.

In the first place we do not think the contract in relation to the sale of the threshing outfit, and the defendant's connection therewith, was evidenced by verbal agreement. It is true that preparatory to making the sale certain verbal negotiations were had, but when the contract was sub· sequently entered into its terms were reduced to writing. Cook, the purchaser, signed an order for the machine in which every detail relating to the outfit—size, quality, price, terms of sale, as well as the provision that defendant guaranty payment of the first instalment, was set forth. And in pursuance of said written contract Cook made the notes for the purchase money, executed the chattel mortgage and earnings contract, and the defendant in like manner, and in pursuance of the entire written contract, indorsed its guaranty on the back of the note first maturing. The guaranty then was made and entered into in pursuance of and in compliance with the terms of the main written contract.

But even where parol proof is permitted to be used along and in connection with that part of the contract reduced to writing, such proof must be *consistent* with and not *contradictory* of the writing. The writing, so far as it goes, is to be treated as the correct expression of the terms agreed on. And this seems to be so even as to the terms which the law implies from the language of the instrument. Blake Mfg. Co. v. Jaeger, 81 Mo. App. 239, decided by us at this term. "Where the language of an instrument has a settled legal meaning, its construction is not open to evidence. Thus a promise to pay money, no time being expressed, means a promise to pay it on demand, and evidence that a payment at a future day was intended is not admissible." 2 Parsons on Cont. 551. "As to the terms, conditions and limitations of the agreement the written contract must speak exclusively for itself." Ib., page 550. But here we have no need to invoke the rule as it relates to the terms *implied* from the language of the contract. The writing now under consideration not only imports but clearly declares that defendant guarantees payment of the note three months after its maturity. The obligation is made subject to no condition or limitation except that the maker is in default. It will not now be permitted to change this positive undertaking by proving a parol agreement of a different or conditional promise. Lane v. Price, 5 Mo. 101; Pearson v. Carson, 69 Mo. 550; Rollins v. Claybrook, 22 Mo. 405; Tracy v. Union Iron Works, 29 Mo. App. 342; s. c., 104 Mo. 193; Newman v. Bank of Watson, 70 Mo. App. 136; Greening v. Steele, 122 Mo. 287; Wright v. Morse, 9 Gray, 337.

All the cases seem to recognize the rule that the parol proof can not be allowed to contradict the terms of the writing —even though the instrument contains only a part of the entire contract. As for example, in Greening v. Steele, *supra*, it is said: "If there was, when the original contract was concluded, a parol contemporaneous agreement, independent of, *and not inconsistent with*, the one put in writing,

or if a part only of the contract was put in writing, then such independent agreement or the part so omitted could have been proved." In Wright v. Morse, *supra,* the supreme court of Massachusetts had under consideration a case similar to this. It·was there said that, "oral evidence is not to be introduced by such party, to vary and control the written promise contained in the note itself; as to show that the note was not to be paid according to its tenor; or that, although absolute on its face, yet it was given upon a condition, and to be void or not payable upon the happening of some future event; thus making an absolute promise a qualified or conditional one."

In our opinion then, the trial court erred in admitting the evidence relating to the so-called antecedent parol agreement had between the defendant's president and plaintiff's agent; erred also in giving defendant's first instruction, quoted in the statement; and erred too in giving the instruction of its own motion which is copied in the abstract.

Judgment reversed and cause remanded.    All concur.