JOSEPH S. MORROW, Respondent, v. JOHN WALTER PRYOR, Appellant.

**Kansas City Court of Appeals, May 6, 1907.**

1. **REPLEVIN: Defendant's Possession.** Replevin commenced after the defendant parted with the control over the goods cannot be maintained; actual possession at the commencement of the suit is necessary.

2. ———: ———: **Leased Premises.** Chattels such as a wagon load of wheat on leased premises without any one present actually claiming and exercising control over them, are in the possession of the tenant.

Appeal from Clay Circuit Court.—*Hon. Joshua W. Alexander, Judge.*

REVERSED AND REMANDED (*with directions*).

*Ralph Hughes* for appellant.

An action of replevin cannot be maintained in this State, where the defendant had not possession or control of the goods at the time the writ of replevin was issued. Davis v. Randolph, 3 Mo. App. 454; Rogers v. Davis, 21 Mo. App. 150; Myers v. Lingenfelter, 81 Mo. App. 251; Shinn on Replevin, p. 153, par. 164; Cobbey on Replevin (2 Ed.), p. 34, par. 61.

*D. C. Allen* and *W. H. Woodson* for respondent.

If the property was in the possession or under the control of appellant, at the time of the institution of

the action of replevin, then the action was well taken. Davis v. Randolph, 3 Mo. App. 458; Cobbey on Replevin, (2 Ed.), sec. 433. Constructive possession is the same in law, as actual possession or control. Cobbey on Replevin (2 Ed.), sec. 431.

BROADDUS, P. J.—This is an action of replevin for one wagon and thirty bushels of wheat commenced before a justice of the peace. The defendant at the trial disclaimed possession of the wheat at the time the writ was issued, or the right to the possession. The wheat was raised on defendant's land by his tenants, C. E. and Leonard Taylor. The lease of the Taylors was for one year ending March 1st, 1906, for annual rent of $450.00, payable in money December 15th, 1905. In the fall of 1904, the Taylors borrowed from plaintiff twenty-three bushels of seed wheat, to be repaid at the threshing of wheat in 1905, a bushel and one-half for each bushel borrowed. The evidence tended to show that defendant knew of the arrangement mentioned between plaintiff and the Taylors, to which he did not object, but stated he wanted plaintiff to see him before he took the wheat away.

Both parties were present when the wheat was threshed. Thirty bushels were put into plaintiff's wagon and the wagon driven by plaintiff to a short distance in a public highway nearby, where he halted and tied the team to a post. He then came back to the place where the threshing was being done and spoke to his employee, a man by the name of O'Hare, and then got into his buggy and went home. After the threshing was over, O'Hare went to the wagon and began to unhitch, when defendant appeared and asked him where plaintiff had told him to take the wheat. O'Hare said that plaintiff told him to take it home, whereupon defendant said plaintiff must not take the wheat until he saw him, the defendant, and he then directed O'Hare to drive the wag-

on back and leave the wheat on the place where it had been grown. O'Hare drove the wagon back to the place, unhitched the team of horses, and left the wagon and wheat in a shed near the dwelling in which the Taylors resided on the leased premises. Defendant opened the gates leading into the premises for O'Hare, rode part of the way on the brake-beam and assisted O'Hare in unhitching the horses from the wagon and helped to push the wagon into the shed. Pryor then went home and was not again on the leased premises while the wheat remained there. One of the Taylors was present at the time when the wagon was driven back and placed in the shed. Defendant's excuse for detaining the wheat on the premises where it was grown until plaintiff saw him, was to prevent any misunderstanding as to the preservation of his landlord's lien on the crop, as he did not know at that time that the crop would be sufficient to pay the rent.

Ed Taylor, who was in the actual possession of the leased premises, disclaimed any right to possession or control of the wheat. The constable's evidence was that when he went to execute the writ he said to defendant, "Walter, I have got a replevin paper to serve on you for a wagon and wheat on your premises; that he asked him, "Where is that wheat?" Defendant said, "In the shed." He then said, "Come along." Defendant said, "No, I ain't got no business out there," and that "he expected something of the kind;" that he "expected Morrow to get out these papers," and that "the wheat is there in the shed, you can go out and get it." Finally, the witness said according to his best recollection defendant said "that he was expecting Morrow would get it, and he could not get it without a writ."

The finding and judgment were for the plaintiff from which defendant appealed. The only question presented on the appeal is whether under the facts an action of replevin can be sustained. There does not

appear to be any difference between the parties as to the law of replevin, but as to its application to the peculiar facts of this case.

It is the well-established law that the action of replevin cannot be maintained which has been commenced after the defendant has parted with and lost all control over the goods claimed. [Davis v. Randolph, 3 Mo. App. 454.] And it is indisputable that replevin lies only against the party in the actual possession of the goods claimed at the commencement of the suit. [Cobbey on Replevin, section 433 and 61; Shinn on Replevin, 153; Rogers v. Davis, 21 Mo. App. 150; Myers v. Lingenfelter, 81 Mo. App. 257.]

The argument of plaintiff to sustain his case is, that, as defendant caused the wagon and wheat to be placed in the shed in question, and as Taylor who was was in the possession of the leased premises disclaimed any possession or control over them, taken in connection with the statement of defendant when the constable went to serve the writ that plaintiff could not get the property without a writ, shows that at the time of the commencement of the suit and the service of the writ the actual possession was in defendant. But we do not think plaintiff's deduction legitimately follows. The disclaimer of Taylor, or the language of defendant to the constable, could in no way affect the actual status of the property. It was not in the actual possession of defendant, nor was it under his control unless by permission of Taylor. Had defendant gone to the extent of claiming that he was in possession, it would not have changed such status. One fact alone controls, viz,: the wagon and wheat were on the premises of the Taylors over which defendant had no control whatever at that time. The possession of the premises being with the Taylors, their possession of the wagon and wheat necessarily follows. Had plaintiff demanded the property of Taylor and he had refused to give it up, could he have

interposed the defense that he did not have the property, or that it was not in his possession and he did not claim to be the owner? Certainly, not. For the law would not allow him to deny that he had possession of the chattels when they were on his premises, and no one else ' present actually claiming and exercising control over them. The defendant did not' have even constructive possession, for Taylor was not holding them as his agent.

The judgment is reversed and remanded with directions to enter up judgment for defendant for his costs. All concur.