THOMAS C. BASSHOR and WALLACE STEBBINS,
Trading as THOMAS C. BASSHOR & Co., *vs.*
JAMES S. FORBES.

*Practice in the Court of Appeals—Parol Evidence—
Individual Liability of a Stockholder of an Incorp-
orated Company under Article 26, section 52 of
the Code.*

Where upon objection to evidence it is admitted by the Court, subject to
exception, and the party objecting to it, does not at some subsequent
stage of the trial, apply to the Court by motion or prayer to exclude it,
he cannot raise the question of its admissibility in the Appellate Court.

Proof of any collateral parol agreement, or independent fact, which does
not interfere with the terms of the written contract, though it may re-
late to the same subject matter, is admissible; and whether such collate-
ral agreement was made, or independent fact occurred, contemporane-
ously with, or as preliminary to the main contract in writing, is quite
immaterial.

A boiler, steam engine and appurtenances were purchased by an incorp-
orated company, it being a part of the agreement of purchase, that the
purchase money should be secured by a promissory note of the company
and a mortgage on the interest of the company in certain lands, and
that the vendors should look only to the company and to the mortgage
for the payment of the purchase money. The note was given by the
company according to the agreement, and the mortgage was likewise
duly executed and delivered to the vendors and by them accepted. On
an action brought under the provisions of Article 26, section 52 of the
Code of Public General Laws, by the vendors against a stockholder of
the company, to recover on the note, it was HELD:

That the plaintiffs were not entitled to recover.

APPEAL from the Superior Court of Baltimore City.

This was an action by the appellants against the appellee,
to recover from the latter as a stockholder of the Oakland
Coal and Iron Company of Baltimore, $4,692.38, with inter-
est, alleged to be due by the company, on its note for that
amount, dated the 28th of September, 1867, payable four

months after date, for which it was alleged that the appellee was liable, because the whole amount of the capital stock of the company had not been paid in, and he was a stockholder thereof to an amount greater than the appellants' claim.

The appellants offered in evidence the certificate of incorporation, incorporating the company "for the purpose of carrying on the business of mining for coal and iron, and other metals and minerals." They also proved that the defendant, as director and general superintendent of the company, and Joseph Wilkins, its president, were authorized to contract on behalf of the company for the purchase of a boiler and engine, to be erected on the company's lands in Allegany county, *for the working of a steam saw mill thereupon;* and that in pursuance of that authority, they did, in the name and on behalf of the company, contract in writing therefor; the whole to be set and put in running order for $4,450; and the company's note at four months, secured by a mortgage on its property to be given therefor, and that the appellants knew that the boiler and engine were meant to be used for a saw mill. They also proved that the note of the company, dated the 28th of September, 1867, at four months for $4,692.38, secured by mortgage of its lands, was given for said engine and boiler, and for additional articles in and about its construction, amounting to $242.38. The appellee proved, subject to exception, that before the written contract for the purchase was executed, and when he called on the appellants to know on what terms they would furnish the engine, boiler and appurtenances, and having agreed to do it for $4,450, they inquired about the means of the company; and being informed by the defendant, that it had no money in its treasury, they proposed to take his individual note, to which he replied, that he would not give it, that he had enough at stake in the company already, without risking a cent more, having purchased his interest as an investment, not as a stock speculation; that the appellants then asked if the directors would give their individual note, to which he

replied, that they would not, and added that the appellants would have abundant security in their boiler and engine, and eight hundred acres of land, and if they could get a mortgage from the company *in full satisfaction of their claim,* they would have abundant security, to which they replied, "very good," and agreed to take the company's note and mortgage, and deliver the machinery. The appellee also proved, that at the time of the execution of the contract one of the appellants told the president of the company that the appellee had refused to make himself individually responsible, as he had already invested enough in the enterprise, and had not bought the stock as a speculation; and that the appellee then told the appellants that they *must rely solely on their mortgage.* The appellee then also said he had been informed that there was coal and iron on the company's lands, but that he had been there and enquired and could find none, and that the only salvation of the stockholders was to use up the timber on the land; and they wanted the engine for that purpose. He also proved on cross-examination by the appellants, that he *entered into the contract with the understanding that. he was not. in any shape or form to be responsible,* and told Basshor, before the contract was executed for the note and mortgage, that if he did not think it was safe on that security, he had better not take it.

The appellee further proved that after the execution of the mortgage, the mortgaged premises were offered for sale, upon an execution *prior in date to the mortgage,* and issued upon a judgment which had been rendered without the knowledge of the officers of the company; that on having his attention directed to it by the sheriff's advertisement, he had called the appellants' attention to it, and that after conversation between some of the officers of the company and the appellants, a paper had been executed between the appellants and Mr. Browning, and left in possession of Mr. Browning, providing that if the appellants should buy the property at the sheriff's sale, Mr. Browning might redeem it by re-paying the purchase

money and the appellants' mortgage thereon. The appellee also proved, subject to exception, that it was afterwards agreed between him and John F. Ehlen, on behalf of the company, and Basshor, on behalf of the appellants, that Basshor should bid in the property at the sheriff's sale for the appellants; that the appellee should assist him in making the purchase and lend the money to pay for it; that the company should have the privilege of redeeming the property, and if it did not, the appellants should hold it *in full satisfaction* of all claims against the company. He also proved that notice was given at the sheriff's sale that the property was sold subject to a large claim of the appellants, and it was knocked down to Basshor for $620, the amount of the judgment; that the appellee lent him the money to pay for it; that Basshor paid to the sheriff the money so lent for that purpose and took from him a deed for the property in fee simple to the appellants; that the loan, with interest, was afterwards repaid to the appellee, when it was understood that the appellants were to keep the property; that they took possession of it immediately after the conveyance of it to them, and that the company had never exercised its privilege of redeeming. The appellee also proved that he had provided himself with a letter of credit for $16,000 and took it with him to Cumberland for the purpose of purchasing the property himself, and would have bought it, and would have gone as high as $11,000 or $12,000 on behalf of the company, but for the understanding with Basshor, under which he bought it without any adverse bid on the part either of the company or the appellee; and proved that it was worth seven or eight thousand dollars when bought by the company.

The appellants then gave evidence tending to rebut the proof of the appellee as to the circumstances and understanding under which the original contract was made, and the note and mortgage were given and accepted, and also as to the understanding under which the property was bought by the appellants through Basshor at the sheriff's sale, and further,

to show that there was no understanding between the parties outside of the original written contract and the paper prepared by Browning.

The plaintiffs then offered the following prayer:

If the jury shall find from the evidence that the five persons named in the certificate of incorporation of the Oakland Coal and Iron Company of Baltimore, offered in evidence by the plaintiffs, being free white persons and citizens of the State of Maryland, did make and sign the same and cause it to be recorded in the year 1865, in the office of the clerk of the Superior Court of Baltimore City; that the said company has since become and still remains indebted to the plaintiffs; and that at the time that the said indebtedness was contracted the defendant was a stockholder in the said company to an amount greater, at the par value of his stock, than the amount of said indebtedness; and if the jury shall further find that the said company has never received from its stockholders, in payment of its stock, the full par value of said stock as fixed in said certificate of incorporation, then the jury are instructed that the plaintiffs are entitled to recover from the defendant in this action such amount as the jury may find to be due from said company to the plaintiffs.

The defendant offered the four following prayers:

1. If the jury believe from the evidence that the promissory note sued on was given for the purchase of a steam engine, boiler and appurtenances bought by the Oakland Coal and Iron Company from the plaintiffs for the purpose of working a saw mill, and appurtenances to be used by said company for the manufacture of lumber for sale in the market, and that such purpose was known to the plaintiffs when they agreed to and did furnish and put up the said engine, boiler and appurtenances, then the said note was void, and the plaintiffs are not entitled to recover.

2. If the jury believe from the proof that the promissory note sued on was given for the purchase of a boiler, steam engine and appurtenances, and that it was part of the agree-

ment of purchase that the purchase money should be secured by a promissory note, and a mortgage on the interest of the Oakland Coal and Iron Company in certain lands, and that the plaintiffs should look only to the company and to said mortgage for the price agreed to be paid for said engine, boiler and appurtenances, and shall further believe that said note was duly given according to the agreement, and said mortgage in like manner was duly executed and delivered to and accepted by the plaintiffs, then they are not entitled to recover in this action.

3. If they believe that the interest of the Oakland Coal and Iron Company in certain lands lying in Allegany county, and in the engine, for the price of which the note offered in evidence was given, was bought at sheriff's sale by, and was conveyed to the plaintiff, Basshor, under an agreement previously made between him, acting for both the plaintiffs, and Forbes, acting for the said company, that said Forbes would aid him in making and paying for said purchase, and that if said property was not redeemed by said company, it should be held by said Basshor for the plaintiffs in satisfaction of the debt due by said company to them ; and shall further believe that said Forbes did so aid said Basshor in making and paying for said purchase, then the plaintiffs are not entitled to recover in this suit—it being admitted that the said property was not redeemed by said company.

4. If the jury believe from the evidence that the fee simple title to the property covered by the mortgage offered in evidence was acquired by the plaintiff, Basshor, after the execution and recording of the said mortgage on behalf of him, the said Basshor, and his co-partner, and that said Basshor, for himself and his partner, has since sold and disposed of the same, then the plaintiffs are not entitled to recover.

The Court (DOBBIN, J.) rejected the first and fourth prayers of the defendant, and granted his second and third in connexion with the plaintiff's prayer, which it refused to grant, except with the qualification contained in the said second and

third prayers of the defendant, but did grant it with such qualification. The plaintiffs excepted to the refusal of the Court to grant their prayer without qualification, and also to the qualification and to the granting of the defendant's second and third prayers; and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*Thomas Rowland* and *John Thomson Mason*, for the appellants.

The plaintiffs sold machinery to the company under a written contract. The defendant offered parol evidence of conversations between the plaintiffs and the company's agents, of whom the defendant was one, which are said to have preceded and accompanied the execution of the contract.

It was upon this evidence that the defendant based his defence, that the plaintiffs had waived his individual liability when the debt was contracted. Conceding the truth of this evidence, as we are bound to do for the purposes of this appeal, it shows no waiver of the *statutory* individual liability. It simply shows that the defendant and the other officers of the company refused to make themselves individually liable *by note*, and that all the parties being ignorant of the existence of the statutory liability, supposed that the plaintiffs would have no security other than the note and mortgage of the company. Such are the utmost inferences that a jury could have been authorized to draw from this testimony; if the plaintiffs had offered no rebutting testimony and had contented themselves with demurring to this evidence, they would have been entitled to judgment upon such a demurrer.

The Court therefore erred in submitting it to the jury to find whether "it was part of the agreement of purchase; that the plaintiffs should look only to the company and the

mortgage;" or, in other words, waive the statutory liability of the defendant.

The testimony, so far from supporting, actually negatived such an hypothesis. And yet the instruction was one which was well calculated to mislead the jury. The testimony showed clearly that the plaintiffs *did look* only to the company and mortgage, (because they knew of no other security;) and the average juryman could hardly be expected to discriminate between this and an understanding or agreement that they *should look* only to the company and the mortgage. The jury very naturally inferred from this instruction following upon the parol evidence which had been laid before them, that the question for them to determine was, whether or not the parties had contracted with reference to individual liability, and that if they had not the plaintiffs could not recover.

This parol evidence, (if it had any relevancy to the case,) was inadmissible, as tending to vary and control the legal effect of the written contract.

This objection was made when the testimony was offered, and is to be considered as renewed by the exception to the defendant's second prayer, in which this evidence was submitted to the jury. The defendant's second prayer should not have been granted:

1st. Because it was founded upon an hypothesis which, (if so construed as to support the legal conclusion of the prayer,) was in direct opposition to the evidence.

2d. Because it was easily susceptible of a construction which (though warranted by the evidence) was in opposition to the law.

3d. Because it submitted to the jury parol evidence to vary and control the legal effect of a written contract.

Upon the general question of individual liability of stockholders, reference may be had to *Norris vs. Johnson,* 34 *Md.,* 485 ; and upon the question of waiver, to *Sodini vs. Winter,* 32 *Md.,* 130.

The defendant, to support his defence that the debt had been satisfied, again resorted to parol evidence in a case where the rights of the parties were settled by a contract in writing.

The land mortgaged to the plaintiffs, to secure their claim against the company, was offered for sale by the sheriff upon a prior judgment. The plaintiffs entered into a written contract with the company, binding themselves, in the event of their purchase of the said land, to permit the company to redeem upon payment of the debt and purchase money. The defendant offered parol evidence to show that the plaintiffs *further agreed*, that if the company did not redeem, the land should be held by the plaintiffs in *"full satisfaction"* of their claim against the company.

The appellants objected to this testimony, and renewed their objection by exception to the defendant's third prayer, in which it was submitted to the jury.

The evidence was inadmissible, as adding to the written agreement of the parties a new and important qualification, and the prayer founded upon it should have been rejected.

The evidence was also inadmissible upon another ground. The contract related to the purchase and redemption of land, and was within the Statute of Frauds.

*S. Teackle Wallis*, for the appellee.

[The Court declined to hear Mr. Wallis on the question of the admissibility of the parol evidence introduced by the defendant, holding that it was not before them for review. REP.]

If the admissibility of the evidence were open for consideration, it ought not to be excluded on the ground of its having added to, varied or contradicted a written instrument, or that any of it tended to prove a parol contract which had been merged in a written one, for it related only to points which the written contract did not profess to embrace.— *McCreary vs. McCreary*, 5 *G. & J.*, 147, 156, 157, 158;

*Dorsey vs. Eagle,* 7 *G. & J.,* 331; *Creamer vs. Stephenson,* 15 *Md.,* 222; *Bladen vs. Wells and Wife,* 30 *Md.,* 583, 584.

The contract relied on in the second prayer of the defendant was not to give up without consideration the individual liability of the stockholders, to which the plaintiffs were once entitled, but that they had never become entitled to it. They might have sold the engine and boiler on the security of the mortgage alone without even the note of the company or its covenant to pay. If it had been part of the contract that the mortgage alone was to be relied on and the company to be under no liability, it would be difficult to imagine whence its liability would arise. The exclusion of the individual liability of the stockholders might as legitimately be a part of the contract of purchase, and the theory of the prayer, supported by the evidence, is that it was.

The contract relied on in the third prayer was not for the giving up of the liability of the company or that of the stockholders, if the latter ever existed, without consideration. The appellee's agreement to aid and his actually aiding the appellants in making and paying for the purchase at the sheriff's sale, was consideration enough for their agreement to retain the property in satisfaction of the debt due by the company, if the latter did not or could not avail itself of its privilege of redeeming it. There was nothing in that contract contrary to the policy of law. Neither the appellee nor the company was under any *obligation* to bid for the property. They were entitled, with or without consideration, to abstain from bidding. By agreeing not to exercise their *right* to bid, and aiding the appellants in making the purchase, for the consideration assumed, they wronged no one.

The company was chartered for the *mining purposes* specified in the certificate, not for the purpose of sawing timber and improving land. An incorporation for the latter purpose required to be differently obtained and would have been subject to other provisions. The mode by which a corporation incorporated under our general law is authorized to extend or

change its business is expressly provided for. The contract to sell the engine and boiler for a purpose *known* to the seller not to be within the corporate power of the company, was void and imposed no liability on the company or its stockholders. *Code, Art.* 26, *secs.* 19, 42, 60, 67; *Penna., Del. and Md. Steam Nav. Co. vs. Dandridge,* 8 *G. & J.,* 248, 318, 319; *Plank Road Co. vs. Young,* 12 *Md.* 484; *Angell & Ames on Corporations,* 253, *note* 2, 255, *note* 5 *and note a ; Campbell, et al. vs. The Mississippi Union Bank,* 6 *Howard,* (*Miss.,*) 625.

The first prayer of the appellee ought therefore to have been granted, and the prayer of the appellants, which ignored this hypothesis, might properly for this reason have been refused.

The acquisition by the appellants of the fee simple title to the mortgaged property and subsequent sale of it merged the mortgage and the debt thereby secured. *Mitchell vs. Mitchell,* 2 *Gill,* 230; *Glenn, et al. vs. Spry,* 5 *Md.,* 117; *Wahl vs. Barroll & Spence,* 8 *Gill,* 293, 294; 1 *Hilliard on Mortgages,* (3d *Ed.,*) 522; *Speer vs. Whitfield,* 2 *Stockton, N. J.,* 107; *James vs. Morey,* 2 *Cowen,* 246, 300, 319; 1 *Greenleaf's Cruise,* 56, (*marg.,*) 61, *top.*

The merger of the mortgage, to which the appellee would have been entitled to be subrogated if compelled to pay the debt, relieved him from liability. *Garey vs. Hignutt,* 32 *Md.,* 552.

ALVEY, J., delivered the opinion of the Court.

The question as to the admissibility of the parol evidence offered by the defendant in the Court below, and which was objected to at the time by the plaintiffs, but admitted by the Court subject to exception, is not before this Court for review, inasmuch as the Court was not at any subsequent stage of the trial invoked to exclude such evidence, and exception taken to its refusal so to do. Whether the evidence was really admissible, the Court below does not appear to have definitively decided. All that was done by the Court was to allow the evidence to be given, subject to the exception of the plain-

tiffs, which might be insisted on at some later period in the course of the trial, when the question of the admissibility or inadmissibility of the evidence could be better understood than at the moment when offered. This course is frequently pursued, in order to facilitate the trial, and as a means of more fully understanding the relation and bearing of the proffered evidence to and upon the issue involved, than can be well seen in the early progress and development of the cause. The practice in this respect is most generally regulated by rule of Court; but, in all such cases, if the party objecting to the evidence intends to insist upon his objection taken in the first instance, he should, before or at the close of the evidence, apply to the Court, either by motion or prayer, to exclude the evidence objected to, and thus have the question of the admissibility of the evidence definitively disposed of, and to the final ruling on this latter application the exception, if desired, should be taken. If this is not done, the benefit of the original objection cannot be availed of here, for the obvious reason that there has been no final decision of the question in the Court below; and the mere statement in the bill of exception that certain evidence was offered and objected to, but admitted subject to the objection, to be disposed of at a subsequent stage of the trial, does not by any means raise the question here as to the admissibility of such evidence. This proposition was, in effect, decided in the case of *Coates & Glenn vs. Sangston*, 5 *Md.*, 121.

But if the question of the admissibility of this evidence was properly before us, we could have no hesitation in declaring the evidence admissible for the purpose for which it was offered. It was not, as supposed by the learned counsel for the plaintiffs, liable to objection on the ground that it tended to contradict, add to, or vary the written contract between the plaintiffs and the Oakland Coal and Iron Company. It had reference to a collateral matter, and about which the contract was silent. The individual liability of the defendant as stockholder in the company is not provided for by the terms

of the contract, but, if it exists at all, can only exist as a statutory incident to such contract, and as collateral to the obligation of the company. The liability of the stockholder is, in one sense, founded in contract, it is true, but such liability is so far collateral to and independent of that of the corporation on the contract itself, that it may be waived or discharged without in any manner affecting or impairing the direct corporate liability. It was the object of the evidence offered to show that the individual liability of the stockholder was waived and excluded by showing that the plaintiffs had entered into the contract with the company with the distinct understanding that they were to look to and rely upon the security furnished by the company, *alone and exclusively*, and that without such understanding the contract would not have been made on the part of the corporation represented by the defendant. This evidence, we think, was competent and admissible, and the objection taken to it wholly untenable. The rule of exclusion, relied on by the plaintiffs' counsel, is in no way infringed by the introduction of the evidence objected to; for it is well settled by the most unquestionable authorities, that proof is admissible of any collateral parol agreement, or independent fact, which does not *interfere with the terms of the written contract*, though it may relate to the same subject-matter; and whether such collateral agreement was made, or independent fact occurred, contemporaneously with, or as preliminary to, the main contract in writing, is quite immaterial. *Lindley vs. Lacy*, 17 *Com. B.*, (*N. S.*,) 578; 2 *Taylor's Evidence, secs.* 1038, 1049. And this principle has been very fully and explicitly sanctioned by this Court in the cases of *McCreary vs. McCreary*, 5 *G. & J.*, 147; *Creamer vs. Stephenson*, 15 *Md.*, 211.

Having said that the parol evidence objected to was admissible for the purpose for which it was offered, it follows, necessarily that, in our opinion, the Court below was right in granting the defendant's second prayer. That prayer submitted to the jury to find, that if it was agreed at the time of

the purchase from the plaintiffs of the boiler, steam engine and appurtenances, that they, the plaintiffs, should rely *only* upon the responsibility of the company, and the sufficiency of the mortgage and note taken for the price of the articles sold or furnished, for payment, then the plaintiffs were not entitled to recover. Of the correctness of this proposition we think there can be no doubt.

It is contended however that because it was proved that the parties to the contract did not know, at the time it was entered into, of the existence of the statute imposing the individual liability upon the stockholders for the debts of the corporation, therefore the plaintiffs cannot be supposed to have intended to waive such liability. But if it be true, as was submitted to the jury to find, that it was distinctly agreed that the plaintiffs were to rely alone upon the liability and security of the company, and no other, it would be any thing but just or fair to allow them to hold the defendant liable upon the theory suggested. We think in reason it cannot be done.

As to the defendant's third prayer, we think that was properly granted also. If the facts therein enumerated were found by the jury, they clearly constituted a discharge and satisfaction of the claim, by the express agreement of the plaintiffs; and of course with that being done, all pretence for holding the defendant liable ceased to exist.

Finding no error in the rulings of the Court below, its judgment will be affirmed.

*Judgment affirmed.*

(Decided 22d May, 1872.)