CASE 86—PETITION EQUITY—MAY 3.

Bush, &c., v. Robinson. .

APPEAL FROM CLARK CIRCUIT COURT.

1. CORPORATIONS — INDIVIDUAL LIABILITY OF STOCKHOLDERS. — The
stockholders of a corporation organized under chapter 56 of the General
Statutes are personally liable for the debts of the corporation to the
amount of the unpaid installments on the stock subscribed by them;
but a creditor of the corporation may, by special contract, waive his
right to look to the individual stockholders, and oral testimony is com-
petent to show such a contract.

2. SAME.—Where the capital stock of a corporation was to be represented
by land to be conveyed to the corporation, and it was provided in the
articles of incorporation that upon the land being conveyed to the
corporation the stockholders should be entitled to have issued to them
as paid-up the full amount of stock subscribed, this provision might,
as between the stockholders and the corporation, be valid, but it is not
so as to creditors, and but for a special contract with the vendor of the
land exempting the stockholders from personal liability they would,
to the extent of the unpaid installments due upon their subscriptions,
be liable to the vendor for the unpaid purchase price of the land.

GRUBBS & MORANCY FOR APPELLANTS.

1. Where stock is paid for at less than par under a fair understanding be-
tween the corporation and the stockholders, the contract is valid and
there is no debt.    (Scoville v. Thayer, 105 U. S., 143.)

2. There being no debt the stockholders (appellants) can not be sued for
an assessment until the assets of the corporation have been exhausted.
And the proof in this case showing that no effort has been made to
exhaust the assets of the corporation, this action is premature.    (Sco-
ville v. Thayer, 105 U. S., 143; Jones' Assignee v. Johnson, 10 Bush,
649; Haldeman v. Ainslie, 82 Ky., 395; Thompson v. Reno, 3 Am.

Bush, &c., v. Robinson.

St. Rep., 814; Bell's Appeal, 115 Pa. St., 88 (2 Am. St. Rep., 532);
Cook on Stock and Stockholders, sec. 200; Morawetz on Corpo-
rations, vol. 2, sec. 820.)

3. The capital stock having been paid for in land at a fair valuation, and
this fact being known to the appellee, he can not now hold the appel-
lants to an assessment. (Bank of Fort Madison v. Allen, 129 U. S.,
373; Morawetz, vol. 2, secs. 829 and 871; Cook on Stock and Stock-
holders, secs. 44, 45, 46; Coit v. North Carolina Gold Amalgamating
Co., 119 U. S., 343; Haldeman v. Ainslie, 82 Ky., 395.)

4. The contract to look to the lands alone and not to the incorporators or
stockholders was a binding contract between the parties. (Cook on
Stock and Stockholders, sec. 216; Morawetz, sec. 871; Thompson v.
Reno Savings Bank, 3 Am. St. Rep., 814; Brashear v. Forbes, 36
Md., 164; Brown v. Eastern S. Co., 134 Mass., 59.)

5. The petition did not contain allegations sufficient to bring this case
within section 14 of chapter 56, General Statutes.

WM. LINDSAY AND BECKNER & JOUETT OF COUNSEL ON SAME
SIDE.

J. M. BENTON FOR APPELLEE.

1. The unpaid installments on subscriptions to stock are liable for the debts
of a corporation; and the stockholders can not by a private arrange-
ment between each other, or between them and the corporation, relieve
themselves from liability to the full extent of the capital stock. (2
Morawetz on Private Corporations, sec. 824; Hatch v. Dana, 101 U.
S., 205, 215; 2 Beach on Private Corporations, sec. 561; Scoville v.
Thayer, 105 U. S., 154; Note to Thompson v. Reno Savings Bank, 3
Am. St. Rep., 819.)

2. Appellee can not be charged with knowledge of or prejudiced by the
private arrangement disclosed for the first time when the answers were
filed. Such an arrangement is void and can not be relied upon for any
purpose. (Union Mutual Life Ins. Co. v. Frear Stone M'f'g Co., 37
Am. Rep., 129.)

3. Bush and Coleman can not set off against their liability the amount of
the corporation's indebtedness to them. (2 Beach, sec. 727; 2 Mora-
wetz, sec. 861; Reno Savings Bank v. Thompson, 3 Am. St. Rep.,
826; Thompson's Liability of Stockholders, sec. 382.)

4. The statute gives the creditors of a corporation a new remedy and ena-
bles them to reach the assets of the corporation remaining in the hands
of the subscribers to its stock in an original and direct proceeding.
(Gen. Stats., chap. 56, sec. 14; Marine and River Phosphate Mining
and Manufacturing Co., &c., v. Bradley, 105 U. S., 175–183; Rev
Stats. of South Carolina, chap. 64, sec. 36; Civil Code of California,
sec. 322; Barnes v. Babcock, 29 Am. St. Rep., 158; Revised Statutes
of Missouri (1879), sec. 736; Tatum v. Rosenthal, 29 Am. St. Rep.,

Bush, &c., v. Robinson.

₀97; Hatch v. Dana, 101 U. S., 205-215; Civil Code of Ky., sec. 92, subsec. 4.)

5. While it is competent for a person contracting with a corporation to agree that he will not hold the stockholders liable in their individual capacities, even to the extent of unpaid subscriptions of stock, yet such a waiver must be clearly shown, which was not done in this case.

J. F. WINN ON SAME SIDE IN PETITION FOR REHEARING.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

March 17, 1890, R. T. Coleman and H. W. Clark associated and became incorporated under chapter 56, General Statutes; name of the corporation being "Grand Boulevard Residence Company," and its principal place of business, Louisville. The articles of incorporation contain the following clauses: "1. That the general nature of business to be transacted is to buy, sell and deal in lands in Kentucky, to lay off same into boulevards, lots, streets, etc. 2. The amount of capital stock authorized is $30,000, to be issued in shares of $100 each, which is fully paid up, represented by the conveyance of about forty-three acres of land, near Winchester, Clark County, and when said land is so conveyed to, and accepted by, the corporation, said amount of stock shall be issued fully paid up and non-assessable for any purpose. 3. The private property of the stockholders, directors and incorporators shall be exempt from corporate debts."

On the same day a meeting was held for the purpose of organizing the company, when the capital stock of $30,-000 was subscribed for, and directed to be issued fully paid up and non-assessable, upon payment at rate of $15 per share by the subscribers, who were R. T. Coleman, S. S. Bush, G. T. Berry and W. E. Bradley. The next day, March 18th, John V. Robinson conveyed to "Boulevard Residence Company" about forty-three acres of land, the

same mentioned in the articles of incorporation, at the price of $18,360, of which $4,590 was then paid, and for residue, notes, secured by lien on the land, were executed by the company through its president, S. S. Bush.

This action was brought by Robinson in Clark Circuit Court against the company and the stockholders named, to recover amount of said notes. And personal judgment therefor was rendered not only against the company, that made no defense, but against Coleman and Bush, each to extent of $4,590, and against Berry and Bradley, each to the extent of $2,295.

Several grounds of defense to the action were relied upon in the lower court, as they are here, but we need consider only that pleaded in paragraph six of the joint answer, as follows: "There was an express contract and understanding with said Robinson that no personal liability was to attach to any officer or stockholder of the company by reason of said notes, or by reason of any indebtedness that might be due to the company from other sources, but that the contract was with the distinct understanding the only claim plaintiff Robinson had, was against the corporation and said tract of land, and not against any individual stockholder thereof."

It appears that prior to organization of the company, S. S. Bush, being at Winchester, had purchased, or obtained from Robinson, an option on twenty acres for Coleman, Bush & Co., a firm engaged in buying and selling lands, which was by telegram enlarged to forty-three acres. But when he went back to consummate the trade, the deed was drawn so as to make the company vendee, and also sole obligor of the notes for deferred payments. Besides Bush, two witnesses, having no interest in the action,

state that when the deed was presented to Robinson, and
the notes signed by the company, by Bush, its president,
and tendered, it was fully and clearly explained to and
understood by him, that the stockholders had paid of their
subscriptions to the capital stock of the company, money
enough to make the cash payment on the land, and did
not intend to risk more, but that he was to look only to
the corporation and the land, its only property or means,
for payment of residue of purchase money, which he
agreed to do.

The land was, as Robinson manifestly knew, purchased
for purpose of mere speculation, at a time when what is
called "a real estate boom" prevailed at Winchester and
vicinity, and at a price three times as great as, according
to evidence in this case, it will now bring, or probably
would have brought very soon after the transaction. And
it is an entirely reasonable belief Robinson was willing
and did agree to waive recourse on the stockholders, rather
than forego a sale whereby he would, without risk, obtain
double the actual value of his land; and in our opinion,
notwithstanding he testifies to the contrary, the evidence
clearly supports the allegation of the answer.

But, although the provision of articles of incorporation
by which the stockholders were, upon the land being con-
veyed to the corporation, entitled to have issued to them
as paid up the full amount of stock subscribed, might, as
between them and it, be valid, it was not so as to creditors.
For section 14, of chapter 56, General Statutes, in terms
provides that stockholders of a corporation shall not be
exempt from individual liability to the amount of the
unpaid installments on the stock subscribed by them, or
transferred by them for the purpose of defrauding cred-

itors; and an execution against the company may to that
extent be levied upon the private property of such indi-
vidual. And having actually paid but $15 upon each share
of stock of the face value of $100, the defendants, now
appellants, are unquestionably liable for balance of pur-
chase price of the land to the extent of the unpaid
installments, unless released by the alleged agreement of
appellee Robinson, and whether they were, is the main
question in this case.

In Cook on Stock and Stockholders, section 216, it is
said: "A corporate creditor may, by express contract
made when the debt was incurred, waive his right to col-
lect from the stockholder debts which the corporation
fails to pay." And in Morawetz on Corporations, section
871, is this language: "A statutory provision declaring
that the shareholders in a corporation shall be individually
liable to creditors, would not prevent the execution of
contracts into which this liability does not enter. If a
person contracting with the corporation should expressly
agree to accept the obligation of the corporation without
the special liability of its shareholders, he would not be
able to charge the latter.   Such provision is solely for
benefit of those dealing with the corporation, and may be
waived by them." In support of the doctrine thus stated,
the following cases are cited: Brown v. Eastern Slate Co.,
134 Mass., 590; Basshor v. Forbes, 36 Md., 134; French
v. Teschemaker, 24 Cal., 518; Robinson v. Bidwell, 22
Cal., 379.

In Brown v. Eastern Slate Co., the plaintiff accepted
promissory notes of the corporation in payment of prop-
erty sold to the company under a written contract.   At
the same time he orally agreed with the directors that the

shareholders should incur no personal liabilities for the claim. And the court held the oral agreement was binding.

In Basshor v. Forbes, a steam engine was purchased by a corporation, for which it gave notes, secured by mortgage on certain lands. And the action was brought on the notes against a stockholder alleged to be liable, because the whole amount of the capital stock of the company had not been paid in, and he was a stockholder thereof to an amount greater than the demand sued on. But upon proof of an oral agreement the vendor was to look to the mortgage and not to stockholders, he was held not entitled to recover.

In both cases cited, the question of competency of oral testimony to prove such collateral agreement was considerd, and it was held that as it did not contradict or vary the written contract, it was competent.

In our opinion the effect of the agreement by Robinson to look to the company and to the lien on the land and not to the stockholders for payment of the notes sued on, was to exempt the latter from liability.

The judgment is therefore reversed, and cause remanded for dismissal of the action against appellants.