CARNAHAN ET AL. *v.* CAMPBELL, RECEIVER.

[No. 19,281.    Filed March 20, 1902.]

CORPORATIONS.—*Action on Stock Subscriptions.*—*Abatement.*—A plea in abatement, in an action by a receiver of an insolvent corporation to collect unpaid stock subscriptions, that all defendants except one reside in other counties than that in which the suit is pending, and that the company has its home office in another county, is without merit. *p. 227.*

SAME.—*Subscription in Accordance with Separate Contract.*—*Action to Collect.*—*Complaint.*—In an action by the receiver of an insolvent corporation to collect stock subscriptions made in accordance with another contract, the action is founded upon the latter instrument which must, by exhibit or otherwise, be made part of the complaint. *pp. 227–230.*

SAME.—*Delinquent Subscriptions.*—*Waiver of Right to Collect.*—The rule of law, that the general creditors of an insolvent corporation may compel delinquent stockholders to pay in the par value of their stock subscriptions, does not apply to a creditor who has by contract waived his right to collect from stockholders a debt that the corporation fails to pay. *p. 232.*

Carnahan *v.* Campbell.

CORPORATIONS.—*Stock Subscriptions.—Collateral Agreement.*—Where a corporation purchased realty from a stockholder under an agreement between the latter and the other stockholders that they were not to be personally liable, such stockholder cannot assert, on the company's default, liability against the other stockholders, though the purchase-money notes contained an unqualified promise to pay. *pp. 230–238.*

SAME.—*Stock Subscriptions.—Collateral Agreement.—Bills and Notes.*— Where a corporation purchases realty from a stockholder under an agreement between such stockholder and the other stockholders that they are not to be personally liable, and the only indebtedness is for the purchase price, in an action by a receiver to recover against delinquent stockholders, it is immaterial that the purchase-money notes held by an assignee are not made payable at any bank. *p. 236.*

From Madison Superior Court; *H. C. Ryan,* Judge.

Action by Bartlett H. Campbell, receiver of the Union Land and Improvement Company, against James R. Carnahan and others, to recover on unpaid stock subscriptions. From a judgment for plaintiff, defendants appeal. *Reversed.*

*R. W. McBride, C. S. Denny, J. W. Lovett* and *F. E. Holloway,* for appellants.

*E. B. Goodykoonts, G. M. Ballard, B. H. Campbell* and *T. J. Study,* for appellee.

GILLETT, J.—The appellee commenced this suit as the receiver of an insolvent domestic corporation. The purpose of the action was to recover upon unpaid stock subscriptions. Certain of the appellants filed their respective pleas in abatement, alleging, in substance, that all of the defendants except one lived in counties of this State other than Madison, and that the corporation had its home office in another county. The court below sustained demurrers addressed to each of these pleas. This was proper. *Herron v. Vance,* 17 Ind. 595 ; *Gainey v. Gilson,* 149 Ind. 58.

Subsequently the appellants addressed a demurrer to the complaint, but their demurrer was overruled, and they reserved an exception. Error is assigned upon this ruling. The complaint alleges the character of said corporation,

and plaintiff's appointment as receiver thereof, by the order
of said court; that in said order he was directed to collect
and pay said corporation's debts; that he duly qualified as
such receiver, and entered upon the discharge of his duties;
that he has obtained leave of court to bring this action;
that he has applied all of the corporate assets, except the
portion of the obligations therein sued on remaining unpaid,
in the extinguishment of the debts of said corporation, but
that there still remains a large amount of its indebtedness
unpaid, to wit, $10,000; that each defendant is a stock-
holder in said corporation to the extent of ten shares, which
he subscribed for; that the contract of subscription exe-
cuted by the defendants is as follows: "April 25, 1893.
We, the undersigned, hereby subscribe for the number of
shares of capital stock of the Union Land and Improvement
Company set opposite our names, each of said shares call-
ing for the sum of $100. We further agree to pay for the
shares of stock as assessments are made and payments called
for by the board of directors of said company, in accord-
ance with a contract made and signed April 10, 1893, be-
tween Jesse C. Heller and the incorporators of said com-
pany"; that each defendant paid $105 upon his subscrip-
tion, and no more; that there remains unpaid upon said
subscriptions the sum of $8,950, which the defendants have
failed and refused to pay, and that it will take all of said
unpaid subscriptions and more to pay the debts of said cor-
poration. The objection urged to this complaint is that the
written contract of April 10, 1893, referred to in the stock
subscription contract, is not set out in the body of the com-
plaint or made an exhibit thereto. As we construe the com-
plaint, the action is founded on this latter instrument. If
the language of said contract of April 25, 1893, did not fur-
ther limit the promise of appellants to pay their respective
subscriptions than to make them payable in the proportions
and at the times fixed by the board of directors, we should
be of the opinion that it would not be necessary to set out

also the prior contract, because it is the law that when a corporation has ceased to be a going concern, and its affairs are in process of liquidation, through the medium of a receiver, the court will treat any stock liability in favor of creditors as immediately due.  1 Cook on Stock and Stockholders, §108; Taylor on Priv. Corp., §543; 2 Thom. Com. on Law of Corp., §1703; *Ross-Meehan, etc., Co.* v. *Southern, etc., Co.,* 72 Fed. 957; *Lewis* v. *Glenn,* 84 Va. 947, 975, 6 S. E. 866; *Washington, etc., Bank* v. *Butchers, etc., Bank,* 107 Mo. 133, 17 S. W. 644, 28 Am. St. 405; *Thompson* v. *Reno Savings Bank,* 19 Nev. 103, 7 Pac. 68, 3 Am. St. 797; *Thompson* v. *Reno Savings Bank,* 19 Nev. 171, 7 Pac. 870, 3 Am. St. 881; *Thompson* v. *Reno Savings Bank,* 19 Nev. 242, 9 Pac. 121, 3 Am. St. 883.  As said by Mr. Morawetz in his work on corporations: "In equity, therefore, the shareholders of an insolvent corporation are held to be unconditionally liable to its creditors to contribute the amount of capital subscribed by them, although their subscriptions were conditional, as between themselves and the company, upon a regular call or assessment by the board of directors."  2 Morawetz on Corporations, §821.

Our conclusion, however, is that under the language of the stock subscription contract it is fairly inferable that the contract of April 25, 1893, did relate to a matter other than the times and proportions of the stock payments.  The express promise of the stockholders to pay for their stock was conditional upon payment being made in accordance with the contract with Heller.  To quote the sentence, treating the words, "as assessments are made and payments called for by the board of directors of said company", elliptically, will illustrate our thought.  The sentence would then read: "We further agree to pay for the shares of stock in accordance with a contract made and signed April 10, 1893, between Jesse C. Heller and the incorporators of said company."  We attach importance to the fact that the contract states that the limitation of liabiliy is to be found in a con-

tract with Heller, whom it is to be inferred was either a promoter or a stockholder.  If the limitation was merely upon the times and amounts of the calls to be made by the board of directors, an appropriate place to have made such a provision would have been in the articles of association. This court held in *Bent* v. *Underdown,* 156 Ind. 516, that a provision in the articles of a corporation expressly limiting the extent of the stockholders' liability concluded not only the corporation, but also its creditors, and as we think that in the case at bar the inference is that the contract that was omitted from the complaint operated to modify, to some extent, the express engagement of the stockholders, such prior contract should have been made a part of the complaint, to the end that the court might have construed the contracts together.  The demurrer to the complaint should have been sustained.  See, for the authorities upon the practice question, *Wood, etc., Co.* v. *Irons,* 10 Ind. App. 454, and cases there cited.  Our conclusion that the complaint is insufficient must lead to a reversal of the judgment. We might, therefore, leave all further questions undetermined; but as it is evident, from an inspection of the record and the briefs of counsel, that the most important questions in the case arise upon a demurrer to each of the paragraphs of answer, other than the general denial, we think that the ends of justice require that we should pass upon such questions.

The appellants filed seven paragraphs of answer.  The first was a general denial.  The other answers are all long, and it would unduly extend this opinion to attempt to give even a synopsis of each of them.  They may, however, if some minor differences are disregarded, be classified, and we deem it proper to make at least a general statement of their character when so classified.  The second, third, fourth, and fifth paragraphs plead, in substance, that the Jesse C. Heller referred to in said stock subscription contract was also a subscriber to said stock; that the agreement

referred to in said contract as having been made April 10, 1893, was in writing, and, as it is set out in said answers, it appears that it was in substance as follows:  That the signers would join in forming the corporation referred to in the complaint, under the voluntary association act of Indiana, for the purpose of buying and selling real estate; that when said corporation was formed said stockholders would vote for the corporation to purchase of said Heller a large number of lots, described in the contract, at and for the sum of $10,000, at which price he agreed to sell said real estate; that $1,000 of said purchase price was to be paid down, and the balance was to be paid in three deferred payments, with interest, the same to be evidenced by the notes of the corporation, and secured by its mortgage upon the real estate.  This contract, as set out in the answers that plead it, purports to be signed by the appellants, said Heller and others, and it is alleged that at the time of its execution and as a part of said agreement, said Heller indorsed upon it the following:  "The said Jesse C. Heller hereby accepts the foregoing proposition, together with all the terms and conditions therein contained, and agrees that there shall be no personal liability against any of the above parties on account of this agreement on their part. (Signed)  Jesse C. Heller."  It is further alleged in said answers that said agreement was consummated; that the purchase-money notes that were executed were not payable in bank; that they were assigned by said Heller to a third person; and that the only indebtedness existing against said corporation, aside from the costs and expenses of this suit, is a deficiency judgment held by said third person, based on a decree foreclosing the mortgage so executed.  The sixth paragraph of answer proceeds on substantially the same general lines as those that we have been considering, except that it does not set out the written contract of April 10, 1893, but alleges a parol agreement to the same effect.  The seventh paragraph, in addition to the allegations already

stated, as contained in the second, third, fourth, and fifth paragraphs, alleged that the notes were assigned after they became due and that the assignee of Heller purchased with notice of the facts.

In the absence of a special limitation in the articles of incorporation, the rule is that the original holders of stock are liable (irrespective of any express promise to pay) for the unpaid instalments of their respective stock holdings in so far as necessary to work out the equities of general creditors, and any secret agreement with the corporation or its agent by which they attempt to limit their liability on such account will be treated as void as against such creditors or those who represent them. 1 Taylor on Priv. Corp., §701; Cook on Stock and Stockholders, §71; *Upton* v. *Tribilcock,* 91 U. S. 45, 23 L. Ed. 203; *Tuckerman* v. *Brown,* 33 N. Y. 297, 88 Am. Dec. 386; *Jewell* v. *Rock River Paper Co.,* 101 Ill. 57; *Goodwin* v. *McGehee,* 15 Ala. 232; *Farnsworth* v. *Robbins,* 36 Minn. 369, 31 N. W. 349; *Thompson* v. *Reno Savings Bank, supra,* at page 173.

While there is no privity of contract between such holders of unpaid stock and the corporation's general creditors, yet the latter, either by compelling the directors to make calls, or, if it is no longer a going concern, by the aid of the corporation's representatives, may compel delinquent stockholders to pay in the par value of their stock for the use and benefit of the creditors.

The statements, however, that we have made apply to general creditors, and do not apply to a creditor who has by contract waived his right to collect from a stockholder a debt that the corporation fails to pay. 1 Cook on Stock and Stockholders, §216; 2 Morawetz on Priv. Corps., 871; *Bush* v. *Robinson,* 95 Ky. 492, 26 S. W. 178; *Basshor* v. *Forbes,* 36 Md. 154; *Brown* v. *Eastern Slate Co.,* 134 Mass. 590; *Whitwell* v. *Warner,* 20 Vt. 425; *Robinson* v. *Bidwell,* 22 Cal. 379; *Kenton, etc., Co.* v. *McAlpin,* 5 Fed. 737; Separate opinion of Champlin, J., in *Young* v. *Erie*

*Iron Co.,* 65 Mich. 111, 127, 31 N. W. 814. "It is well settled law," said the court, in *United States* v. *Stanford,* 17 C. C. A. 143, 70 Fed. 346, "that the creditor of a corporation may, by express contract at the time the debt is incurred, waive his right to collect from the stockholders debts which the corporation may fail to pay. 'If a person chooses to deal with a partnership or joint stock company upon the terms that its funds, and they only, shall be available to make good his demands, he cannot afterwards depart from those terms, and hold the members individually liable, as if no such restriction had been agreed to.' " Thompson Corporations, pp. 2163, 2164, §3008. In *Coit* v. *North Carolina, etc., Co.,* 14 Fed. 12, 18, it was said by Mr. Justice Bradley: "To make the stockholders liable personally to Mr. Coit, on the ground that it became a trust fund for his benefit, would be, instead of promoting justice, promoting injustice. It would enable Mr. Coit, by a mere trick of the law, to take money out of the pockets of these men which he never expected or relied on."

Counsel for appellee argues in defense of the ruling overthrowing the paragraphs that plead the written contract of April 10, 1893, that as that contract did not provide the amount at which the corporation should be capitalized, or the amount of stock which each of the subscribers would take, the agreement of Heller cannot be construed as an agreement to exempt them from stock liability. If this proposition were granted, it would be difficult to point out what other substantial liability the signers of the contract were guarding against. This agreement must be construed, however, in connection with the stock subscription contract of April 25, 1893, and when so construed it is plain that such signers were guarding against the indirect liability that the creation of an indebtedness of $9,000 would impose upon them.

Appellee's counsel further insist that the stock subscription contract, and the execution of the purchase-money

notes, which contained unrestricted promises to pay, oper-
ated to merge all prior agreements, written and oral. We
have no occasion to challenge this proposition, in so far as
the rights of the corporation are concerned. The matters
pleaded, however, are not intended to operate in derogation
of the rights of the corporation, but are assigned by the
pleader as reasons why, at what is in effect the suit of the
assignee of a person to whom the notes were made payable,
the separate contract with the stockholders should not be
disregarded. Such prior contracts are not contracts to
which the corporation is a party, but they are contracts
between the stockholders. With regard to a substantially
similar case the supreme court of Massachusetts, in the
case of *Brown* v. *Eastern Slate Co.,* 134 Mass. 590, at page
591, said: "The agreement does not touch anything to be
read on the face of the notes. In terms, the notes promise
only the payment of a sum of money by the company on a
certain day. They have nothing to say about the defend-
ants at all. If then the agreement is held to vary them in
their legal effect, it must be on the ground that the statute
which makes stockholders liable in certain cases makes that
liability a term of the notes by implication. With regard
to this, it will be observed that the statute does not create
a chartered partnership which remains a partnership and
contracts as such, although granted certain corporate pow-
ers. It does not make or leave the members primary con-
tractors or debtors. It creates a corporation out and out,
and then imposes a secondary and subsidiary liability upon
the members 'for its [the corporation's] debts or contracts.'
The liability of the members does not arise until after the
contract has been broken, a judgment recovered upon it, and
execution returned unsatisfied. The corporation is the only
promisor or debtor, it alone breaks the contract by its fail-
ure to pay, and it alone is sued. The liability of the mem-
bers is no part of the original undertaking, but a conse-
quence attached by the law to its breach." So, in *Basshor*

Carnahan v. Campbell.

v. *Forbes,* 36 Md. 154, the court stated (at page 165), that it "could have no hesitation in declaring the evidence admissible for the purpose for which it was offered. It was not, as supposed by the learned counsel for the plaintiffs, liable to objection on the ground that it tended to contradict, add to, or vary the written contract between the plaintiffs and the Oakland Coal and Iron Company. It had reference to a collateral matter, and about which the contract was silent. The individual liability of the defendant as stockholder in the company is not provided for by the terms of the contract, but, if it exists at all, can exist only as a statutory incident to such contract, and as collateral to the obligation of the company. The liability of the stockholder is, in one sense, founded in contract, it is true, but such liability is so far collateral to and independent of that of the corporation on the contract itself, that it may be waived or discharged without in any manner affecting or impairing the direct corporate liability. It was the object of the evidence offered to show that the individual liability of the stockholder was waived and excluded by showing that the plaintiffs had entered into the contract with the company, with the distinct understanding that they were to look to and rely upon the security furnished by the company, alone and exclusively, and that without such understanding the contract would not have been made on the part of the corporation represented by the defendant. This evidence, we think, was competent and admissible, and the objection taken to it wholly untenable. The rule of exclusion, relied on by the plaintiffs' counsel, is in no way infringed by the introduction of the evidence objected to; for it is well settled by the most unquestionable authorities, that proof is admissible of any collateral parol agreement, or independent fact, which does not interfere with the terms of the written contract, though it may relate to the same subject-matter; and whether such collateral agreement was made, or independent fact occurred, contemporaneously with, or

as preliminary to, the main contract in writing, is quite immaterial." These authorities make plain the proposition that when Heller received the purchase-money notes, although they contained the unqualified promise of the corporation to pay them, yet he was not at liberty to assert, upon its default, a subsidiary liability against the appellants, because he had expressly contracted with them that no such liability should exist.

The orderly development of the legal propositions involved in this case has thus far required that we should consider the rights of the appellants to set up the equities of their alleged agreements as against Heller. Having determined that, if the averments of the answers are true, Heller would be without right, as against them, if he were still the holder of the indebtedness, it remains to consider the rights of his assignee. Each of the paragraphs of answer that we have been considering allege that the purchase-money notes were not made payable at any bank in this State. We regard this as an immaterial circumstance. The question herein involved is not a question as to the rights of the corporation, for confessedly it had no defense. While it is true that, under the statute, a note not payable at bank is subject to the defenses of the maker to the full extent provided by statute (§7517 Burns 1901, §5503 Horner 1901), yet this suit is not based on the notes, but is based on the equity that exists in favor of a creditor who has presumptively purchased the paper of the corporation on the strength of the obligation of the shareholders to pay the amount of the par value of the stock they purchased into the corporate treasury. Notice of the equities of the appellants is a matter of defense. 3 Thomp. on Law of Corp., §3636. If the equities of the appellants and the assignee of Heller are equal, the claim of the latter will be upheld. If Heller's assignee acquired the legal title to the notes, by purchase and indorsement, before he acquired any notice, actual or constructive, of the equity that existed as

Carnahan *v.* Campbell.

between the appellants and Heller, it results that his is the better right. It will not avail him, however, to acquire merely the legal title to the notes, if he took such title with actual or constructive notice of appellants' defense; for in such case equity will not aid him in his pursuit of the subsidiary liability against the stockholders. The omission to pay for the shares would be a practical fraud upon him, if he had no notice of the agreement, but if he had such notice before he purchased, he would be a conscienceless chancellor who, without misapprehension as to his duty, would extend to the assignee a remedy except as against the corporation.

At common law choses in action were not assignable. Subsequently the law permitted the assignee to sue in the name of the assignor. The provision of the code authorizing the assignee to sue in his own name has only changed the form of the action, but not the effect of the assignment. Such instruments, when not governed by the law merchant, are still subject to all of the equities of the maker. 1 Parsons on Contracts, 230; *Murray* v. *Lylburn,* 2 John. Ch. 441, and, for an exhaustive discussion of the whole subject, see note to *Bassett* v. *Nosworthy,* as reported in 2 White & Tudor's Leading Cases in Equity (4 Am. ed. from 4 London ed.), 1. The assignee in such a case is charged with notice of such defenses as the maker may have, because, as the assignee is conclusively presumed to know the law, the instrument on its face is notice to him of the existence of such possible defenses. Stock liability obligations are to be widely differentiated from the class of obligations we have last mentioned, because all persons have a right to assume, without inquiry, where there is no notice, actual or constructive, to the contrary, that the stockholders have done, or will do, that which the law requires of them (*Clow* v. *Brown,* 150 Ind. 185); and it is therefore against equity to allow a defense of a secret agreement limiting liability unless the stockholders can at least show such notice to the purchaser as was calculated to put him, as a reasonably prudent man, on inquiry.

It is not alleged in the complaint or in any of the answers that the stock subscription contract was a part of the articles of incorporation, so as to charge said assignee with constructive notice, within the case of *Bent* v. *Underdown,* 156 Ind. 516. If such were the fact, we are of opinion that notice of the prior contract would be imputed to him. No paragraph of answer except the seventh alleges that said assignee purchased with knowledge of the alleged oral and written contracts that appellants, in their respective paragraphs of answer, allege that they had with Heller, and it therefore follows that none of the paragraphs demurred to except the seventh can be held good on any other ground than that a bad paragraph of answer is sufficient as against a bad complaint.

Judgment reversed, with instructions to the court below to carry appellee's demurrer to the answers back to the complaint, and to sustain said demurrer to the complaint, and for further proceedings not inconsistent with this opinion.