# MAIN *v.* AUKAM.

IMPLIED ASSUMPSIT ; PARTIES TO ACTIONS ; EVIDENCE ; EXCHANGE OF LANDS.

1. Where in a transaction involving the exchange of properties, one of the parties is induced to pay off a mortgage on land taken by him, and to sell and deliver chattels to the others, by their false and fraudulent representations as to the title of certain other land for which he is given a deed, which title afterwards proves fictitious, the defrauded party can maintain an action of *assumpsit* against the others to recover the money paid by him to discharge the mortgage, and for the value of the chattels delivered by him to them.
2. That the party having the legal title of the mortgaged land taken

by the plaintiff, in such a case, conveyed it to the plaintiff, and assisted in the consummation of the exchange and retained for two years a paper writing relating thereto, which had been executed by the plaintiff and one of the other parties, who was his sister, are sufficient facts to justify the jury in finding he was a party to the transaction and so liable to the plaintiff.

3. Parol evidence of an oral agreement, collateral to and distinct from a contract for the exchange of lands, whereby one of the parties agrees to pay off a mortgage on certain land, in consideration of the conveyence to him of certain other lands, is admissible in an action by the party paying off the mortgage to recover the amount so paid upon the ground that the title to the land conveyed to him was fictitious, without violating the rule excluding parol evidence to add to or vary the terms of a written instrument.

4. The acts and declarations of an agent in the course of his employment, in relation to its subject-matter, bind his principal.

5. No other authentication of the public statute law of a State is required in another jurisdiction, than the impress of the authority by which it is published, contained in the book itself.

No. 721. Submitted January 5, 1898. Decided March 9, 1898.

HEARING on an appeal by the defendant from a judgment on verdict in an action of *assumpsit. Affirmed.*

The Court in its opinion stated the case as follows:

This case has been in this court on a former appeal (4 App. D. C. 51), and the judgment was then reversed for error found to exist in the admission of certain evidence offered by the plaintiff, Frederick G. Aukam. After second trial the case is again here on exceptions taken by the defendants, the verdict and judgment being against them. Questions were raised by the defendants both as to the admissibility of evidence, and as to the instructions given on the whole evidence, and instructions prayed for and refused to be given to the jury. A great many exceptions were taken by the defendants in the course of the trial, but a large proportion of them were but mere repetitions, and the real questions involved are reducible to but few in number.

The action is one in *assumpsit* to recover money paid by the plaintiff Aukam to the use of the defendants, Mollie M.

Main and Lewis C. Main, and which, as it is alleged, the plaintiff was induced to expend by the fraudulent representations and devices of the defendants; and also for the value of certain furniture or personal property that the plaintiff was induced to surrender and deliver to the defendants upon their false and fraudulent representations. The declaration alleges that the plaintiff was induced to assume and pay off a certain mortgage for $2,000, an encumbrance upon a certain farm known as the "Boyle Farm," that the defendants had conveyed or agreed to convey to the plaintiff in exchange for certain other property, upon the false and fraudulent representations and assurance, that the title to certain lands in Tattnall County, State of Georgia, was a good and valid title in one Mason, the grantor named in certain conveyance of said lands to said plaintiff, which said conveyance said defendants had procured to be executed, etc., and by the aforesaid false and fraudulent representations, said defendants falsely and fraudulently induced the plaintiff to sell and deliver to them certain chattels and furniture, the property of the plaintiff, of the value of one thousand dollars; and the defendants then, etc., as the consideration for plaintiff's so assuming payment of said mortgage, and his sale and delivery to them of said personal property, delivered the aforesaid deed for said Georgia lands to the plaintiff upon the condition and with the understanding between the plaintiff and defendants that if the title of the said Mason to said Georgia lands was not good and valid, they, the said defendants, would make the plaintiff whole to the extent of the value of said personal property, and the amount of said mortgage; and the plaintiff, relying, etc., delivered said personal property, and assumed the payment of the mortgage debt, and actually paid the same; whereas in truth and fact the said Mason did not then have, and never did have, any title to said Georgia lands, and which fact the defendants well knew at the time of said representations, etc., by reason whereof the defendants became and

are indebted to the plaintiff in the sum of three thousand dollars.

To this declaration the defendants pleaded separately. Mollie M. Main pleaded that she was not indebted as alleged; and that she did not promise as alleged. The defendant, Lewis C. Main, pleaded several defences: 1st. That he never was indebted, as alleged; 2d. That he never did promise as alleged; 3d. That he had no interest in or title to the Tattnall County lands in Georgia, and never had any dealings with the plaintiff in respect to such lands; 4th. That he never had any understanding or dealing with the plaintiff, or any one else, in respect to any personal property of the plaintiff, as alleged.

Issue was joined on the two pleas of Mollie M. Main, and the first and second of Lewis C. Main.

*Mr. W. L. Cole* and *Mr. D. W. Glassie* for the appellants:

1. When one is induced by false representations into making a contract to his injury, he has his remedy, viz.: 1st. He may rescind the contract, treat it as if it had never existed, and, restoring what he has received, recover what he has paid out by reason of it; 2d. If he does not rescind, or if he cannot rescind because he is unable to return what he has received, his remedy is by an action of deceit, not in *assumpsit*. *Piersoll* v. *Chafin*, 44 Pa. St. 9; *Clarke* v. *Dickson*, E. B. & E. 148; *Garland* v. *Spencer*, 26 Me. 528; *Derry* v. *Peak*, L. R. 14 App. Cas. 346; *Myers* v. *Everett*, 4 Campb. 22; *Powell* v. *Edmons*, 12 East, 11; *Fuller* v. *Atwood*, 13 R. I. 316; Perry Com. L. Plead. 87; 1 Chitty Plead. 106–107. In the case at bar we are dealing with neither of these. For the plaintiff has not rescinded; nor is the action for deceit; on the contrary the plaintiff sues in *assumpsit* on an entire indivisible contract. He is not disaffirming the contract or any part of it; he is setting it up. He takes his stand upon the contract as a whole, averring performance of it on his part and sues for the

breach of it. The only question then is, what is this alleged contract which has been broken? It is distinctly stated in the declaration to be a warranty that the title to certain Georgia lands exchanged by the defendants with plaintiff, is good. It is claimed that the contract for the sale or exchange of these and other lands was reduced to writing. This warranty, taken as an *assumpsii*, is a term in that written contract or it is nothing. If the warranty was not contained in said paper parol evidence to set it up to support an action of *assumpsit* is clearly not admissible.

2. The action at bar is *assumpsit*, setting forth a consideration, a promise, and a breach. The consideration and the promise form a contract upon the breach of which this action is brought. The contract declared on is a contract with both of the defendants jointly, for the exchange of a certain parcel of land in New York for certain lands in the District of Columbia and Maryland, and, as claimed, certain lands in Georgia. Such a contract is within the statute of frauds. *Purcell* v. *Miner*, 4 Wall. 513; statute of frauds, Secs. 4–17; *Saunders* v. *Wakefield*, 4 B. & A. 595. And must be in writing and such writing must name the parties; state the consideration as well as the promise. That is to say, the memorandum required by the Statute of Frauds must fix the subject-matter of the contract and must contain the essential terms of the sale. *Williams* v. *Morris*, 95 U. S. 444; *Sharlon* v. *Morris*, 20 Ch. Div. 90.

3. There is no such privity of contract between the appellee and the appellant, Lewis C. Main, as to entitle appellee to maintain an action in *assumpsit* against him. *Bank* v. *Whitman*, 94 U. S. 343; *Tilley* v. *Cook County*, 103 U. S. 156. No person can be sued for breach of contract who is not a party to the contract. Perry on Com. Law Pl. 124.

4. Parol evidence is not admissible to vary the written agreement. The contract for the exchange of the New York property for the Boyle farm and the Georgia lands

(assuming the latter to have been so exchanged) is an entire contract. The items are so interdependent that the parties can not be considered to have entered into it, but with a view to the performance of the whole. The contract is, therefore, an entire indivisible contract. *Cook* v. *Toombs,* 2 Anst. R. Exch. 420; *Thayer* v. *Rock,* 13 Wend. 53; *McMillen* v. *Riley,* 6 Gray, 500.

Parol evidence is not admissible at common law to add to, vary or qualify a writing by way of what was said between the parties, either before the written instrument was made or during the time it was in state of preparation. 1 Greenleaf, 275; 1 Sugden, V. & P. 178; *Rich* v. *Jackson,* 6 Ves. Jr. 334. This would be obvious even if the contract had been merely for the exchange of property not land. But the undertaking sued on was an undertaking to make plaintiff whole for any failure of title to Georgia lands. This surely was a part of the contract of exchange of lands and is clearly within the Statute of Frauds. *Dyer* v. *Graves,* 37 Vt. 369; *Purcell* v. *Miner,* 4 Wall. 513; *Merchant* v. *Cook,* 7 App. D. C. 391. It follows, therefore, that unless the guaranty of title to said lands was incorporated in a written agreement between the appellee and appellants, it did not form a part of the contract, and no parol evidence can be admitted to show that such lands and such guaranty of title were a part of it. *Inham* v. *Child,* 1 Brown C. C. 92; *Portmore* v. *Morris,* 2 Brown C. C. 219; *Martin* v. *Pycroft,* 2 DeGex, M. & G. 795; *Specht* v. *Howard,* 16 Wall. 565; *Forsythe* v. *Kimball,* 91 U. S. 251; *Brown* v. *Wiley,* 20 How. 447; *Falk* v. *Moebs,* 127 U. S. 597; *Thompson* v. *Ketchum,* 8 John. 189; *Higginson* v. *Clowes,* 15 Ves. 321; *Bradford* v. *Romney,* 30 Beav. 431.

5. It was error to admit in evidence what purported to be article 3, section 2705 of the Code of Georgia of 1873, without properly proving or authenticating the same. The Supreme Court of the District of Columbia is a court of the United States. It is created for the purpose of adminis-

trating local laws of a single Territory (the District of Columbia), and is not called upon to administer the laws of sister or the several States.   See *Hanley* v. *Donohue*, 116 U. S. 1; *Owing* v. *Hall*, 9 Pet. 625.

Mr. *A. B. Duvall* and Mr. *Samuel Maddox* for the appellee:

1. *Assumpsit* is the proper action to recover money obtained or paid out by falsehood and fraud; such money is always thus recoverable.   *Catto* v. *Phelan*, 2 How. 376; *Schuchart* v. *Allison*, 1 Wall. 359; *Shippen* v. *Bowen*, 122 U. S. 575; *Raynor* v. *Wilson*, 43 Md. 440; *Bernci* v. *Balto.*, 56 Md. 360; 28 Am. & Eng. Encyc. L. 823.   This court on the former appeal held the action well brought.   *Main* v. *Aukam*, 4 App. D. C. 51.

The controlling question in the case is whether the appellee paid the $2,000 mortgage in consideration of anything; whether there was a failure of consideration by reason of the fraud practiced by the appellant.   This question was fairly submitted to the jury under instructions.

2. A vendor who induces his vendee to purchase land by falsely and fraudulently representing that the title is perfect is liable to the vendee for such fraud, even though the contract for purchase provided for and was consummated by a quitclaim deed only, for a vendee is always entitled to the exercise of good faith and honesty on the part of the vendor. *Ballou* v. *Lucas*, 59 Ia. 22.   The statute of frauds has no application to such case.   The material inquiry is as to the fraud and damage, and not as to the particular species of property as to which it has been perpetrated.   *Monell* v. *Colden*, 13 Johns. 395; *Whitney* v. *Allaine*, 1 N. Y. 305; *Clark* v. *Baird*, 9 N. Y. 197; *Height* v. *Hoyt*, 19 N. Y. 474; *Culver* v. *Avery*, 7 Wend. 380; *Ward* v. *Wiman*, 17 Wend. 193; *Tyner* v. *Cotter*, 67 Wis. 488; *Keefer* v. *Rogers*, 19 Minn. 32; *McKee* v. *Eaton*, 26 Kan. 226; *Bartley* v. *Smook*, 61 Mo. 213; *Hays* v. *Bonner*, 14 Tex. 629; *Rhode* v. *Alley*, 27 Tex. 443; *Gunby* v. *Sluter*, 44 Md. 237.

3. Appellee confided in the statements and representations of appellants in respect of the title to the Georgia lands upon the assumption that the owners knew their own property and truly represented its title. Even their honest ignorance of entire want of title would be the result of gross negligence, and a false representation founded on mistake resulting from such negligence is a fraud. *Smith* v. *Richards*, 13 Pet. 38; *Cooper* v. *Schlesinger*, 111 U. S. 148; 5 Am. & Eng. Encyc. L. 320, 344. There was no necessity in the case at bar to tender a reconveyance of the Georgia lands. There is no rule requiring such tender where, as here, the thing is valueless. *Smeltzer* v. *White*, 92 U. S. 396.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

It may simplify the question raised on the exceptions to state in advance and preliminary the general principles upon which the action is founded, and the elements that may be considered in determining the question of the defendants' liability in such action.

As we have seen from the allegations of the declaration, the implied *assumpsit* to pay and refund the money to the plaintiff, is claimed to be founded upon the false and fraudulent representations and contrivance of the defendants, whereby the plaintiff was induced to part with his money and chattels, to the use and benefit of the defendants.

The authorities are uniform in holding that, whenever one man has expended and laid out money for the use of another by his authority, or at his request, the *law implies*, from the person on whose account and for whose use the money has been expended, *a promise of repayment*, in the absence of circumstances showing that the money was advanced with no intention of receiving it back. If, therefore, a person who owes a debt to A, by any contrivance or device causes B to pay it, an action upon an implied *assumpsit* will lie against such person to recover back the amount, and the machinery or device by which the payment was procured

or brought about is wholly immaterial. *Brittain* v. *Lloyd*, 14 M. & W. 762; *Cross* v. *Cheshire*, 7 Exch. 43; *Barber* v. *Butcher*, 8 Q. B. 863. And so the law will raise an *implied promise* to pay back money that has been received without consideration, or upon a fraudulent or illegal consideration (*Catts* v. *Phalen*, 2 How. 376, 381); or where the ostensible consideration has failed; and therefore an action may be maintained upon any *implied promise*, such as that paid by the grantee of an annuity to recover back money paid for an annuity which has been set aside, or has become void for want of registry or enrolment. *Shove* v. *Webb*, 1 T. Rep. 732; *Scurfield* v. *Gowland*, 6 East, 241; *Davis* v. *Bryan*, 6 B. & Cr. 656. And so an action upon an *implied assumpsit* may be maintained for money paid as a consideration or *bonus* for a lease made by a person who is subsequently found to have no right to grant the lease. *Cripps* v. *Read*, 6 T. Rep. 606; *Wright* v. *Colls*, 8 Com. B. 164.

If, therefore, upon the principle just stated, the plaintiff was induced to part with his money to pay off the mortgage on the land, or to sell and deliver his furniture, by the false and fraudulent representations of the defendants as to the title to the Georgia lands, and that title proved to be false and fictitious, there can be no doubt that an action in *assumpsit* can be maintained for the recovery of the money that the plaintiff was thus fraudulently induced to expend to discharge the mortgage encumbrance upon the land of the defendants, and for the value of the furniture sold and delivered to them, upon the same false and fraudulent representations.

On this appeal, there have been fourteen errors assigned on the rulings of the court at the trial below. But it will not be necessary to examine all these assignments of error in detail. There are some four or five main or controlling propositions that would seem to embrace everything that is material to be considered on this appeal, and as they are ruled the judgment must be affirmed or reversed.

These material and controlling questions are: 1st. Whether

there has not been a misjoinder of defendants; that as Lewis C. Main did not sign the written contract for the exchange of properties, signed by the plaintiff and Mollie M. Main, whether he is properly joined in the action; and this, according to the contention of the defendants, depends upon the question, whether Lewis C. Main is a party to and bound by the written agreement for the exchange of properties of the 15th of September, 1888.

2d. Whether an oral agreement of the plaintiff to assume and pay the mortgage debt charge upon the "Boyle" farm of the defendants and their agreement to convey or cause to be conveyed and assure the title of certain Georgia lands as consideration for the assumption and payment of the mortgage debt by the plaintiff, is admissible, either because of ambiguity in the written memorandum of agreement for the exchange of properties, or as a collateral or supplemental agreement between the parties?

3d. Whether the acts, declarations and representations of William H. Main, the brother of the defendants, were properly admissible in evidence against the defendants, as of a person authorized to act for the defendants, or whose acts and representations were approved and adopted by the defendants, as made and done in their behalf?

4th. Whether the admission in evidence of a section of the Georgia code of statute law, without special verification thereof, was error; and,

5th. Whether there was error in granting the instructions prayed for by the plaintiff or in refusing to grant certain instructions prayed for by the defendants to guide the jury in considering the facts of the case?

1. With respect to the question of misjoinder of defendants, and the nonadmissibility of the memorandum of agreement of the 15th of September, 1888, clearly there is nothing in the case to support such contention. If this were an action on the contract for the exchange of properties, the objection could not prevail. The conditional mem-

orandum of agreement to exchange properties, though signed by the plaintiff and Mollie M. Main, and not by Lewis C. Main, was not under seal, and it was quite competent for the latter to become a party to the contract without signing the informal paper or memorandum of a contract drawn up and signed by the plaintiff and only conditionally accepted by Mollie M. Main, one of the defendants. This informal paper was left in the possession of the defendants, and they retained possession of it until the time of trial; and when produced it was considerably defaced. The paper, as produced and read in evidence, is in these terms:

"WASHINGTON, D. C., September 15, 1888.

"I hereby agree to the following condition with a view of trading property, consisting of about (240) two hundred and forty acres of farm lands in the District of Columbia, near and in the city line, as shown on the map made by one B. G. W. Jackson, C. E., and known under the title of Boyle's farm, now owned by Miss Mollie M. Main, of Washington, D. C., party of the first part, and which is subject to two thousand dollars.

"In consideration of above property I offer, free and clear, all property stipulated in the printed circular executed by F. G. Aukam and signed by him, and located in the town of Brunswick, State of N. Y., after Tuesday, September 18th, subject to a former negotiation which, if I should accept by Tuesday, September 18, 1888, will make null and void all the above, and I will telegraph results of this negotiation before 6 p. m. on said Tuesday.          F. G. AUKAM.

" The above is acceptable to me, providing I can realize five thousand dollars on the property of F. G. Aukam, as described.                    MOLLIE M. MAIN.

" Witness to signatures of F. G. Aukam & Mollie M. Main.

"WM. H. MAIN."

12 Ct. App.—26

It thus appears from the terms of the paper that it was only a conditional agreement, subject to the ascertainment of future contingent facts, dependent upon future negotiation, before it could become binding upon either side. The paper as signed furnished a mere basis for future action in carrying forward and completing a contract of exchange. And to the contract thus initiated it was perfectly competent for Lewis C. Main to become a party; and it appears, both by interest in the subject matter, and actual participation in the transaction, that he did become a party to the contract. He was the holder of the legal title of the Boyle farm, in the District of Columbia, and he joined his sister in making the conveyance of that farm to the plaintiff with covenants for general warranty of title, and for further assurances. He took the deed, with other papers relating to the title of the farm, to Brunswick, N. Y., and participated with his brother, William H. Main, in consummating the contract of exchange. And to that end he and his brother, William H., entered into a bond to the plaintiff to indemnify the latter against all claims for taxes, etc., and against all contracts, suits and actions that might thereafter be attempted to be enforced against the "Boyle" farm. Upon consummating the exchange of properties, he received the $5,000, that was raised upon the Brunswick property, that had been, by special direction, conveyed to William H. Main; and he held in his possession, for more than two years, the paper that is now produced, and called the contract of exchange. These facts were all before the jury; and they were certainly sufficient to show that Lewis C. Main was a party to the contract of exchange.

But, as we have already stated, and shown upon authority, it is error to contend that the present action is upon the contract of exchange; that contract, and the collateral or supplemental agreement with respect to the assumption of the mortgage debt, were but inducements to the payment of the money in taking up the mortgage upon the farm.

The action is founded *upon an implied assumpsit* to pay back or refund money that the plaintiff was induced to pay for the defendants in the discharge of the mortgage debt, for which they were bound, and which payment the plaintiff was induced to make by the fraudulent representations, devices and deceit of the defendants in regard to the existence and title of the Georgia lands. And all the facts and circumstances of the transaction, to show the fraud and deceit, were properly admissible in evidence.

2. It is insisted by the defendants, and much of the brief of counsel is devoted to an effort to show that no oral agreement can be set up or allowed in addition to the written agreement of September 15, 1888; that no extrinsic evidence could be received to show the facts and circumstances under which the mortgage debt was assumed by the plaintiff, or the misrepresentations and fraud practiced by the defendants, in regard to the ownership and title of the Georgia lands; that the written memorandum of agreement for the exchange of properties must be taken as *the exclusive evidence of the contract,* and of the entire contract between the parties, and that the extrinsic evidence allowed to prove the assumption by the plaintiff of the mortgage debt, in consideration of the conveyance of the Georgia lands, and the representations of the defendants in regard thereto, violated the well-settled principle of evidence, that no extrinsic matter can be admitted that adds to, varies, or in any manner changes the terms of a written contract; and therefore all such extrinsic evidence should have been excluded. But that general principle in the law of evidence, while it may be conceded to exist and applicable in a proper case, has no application to this case.

As we.have seen, the written memorandum of the agreement to exchange properties, was produced by the defendants ; and while it refers to the fact that the Boyle farm in the District of Columbia was subject to $2,000, it did not specify whether it was by mortgage, judgment, or for bal-

ance of purchase money; and it utterly failed to declare who was to discharge this encumbrance. And while the plaintiff in his testimony swears that this memorandum, as he wrote and signed it, referred to and embraced in the exchange one thousand acres of Georgia lands, the three Mains all positively swear that the paper never did mention or make any reference whatever to Georgia lands; that the paper now expresses everything that was reduced to writing at the time it was signed; and that it has not been in any respect altered or changed. Taking, then, the paper, as it has been produced (and the defendants can not be heard to say that it has been altered in any respect), we perceive no difficulty in regard to the extrinsic evidence that was admitted. Such evidence did not subtract from or contradict in any respect the memorandum contract of September 15, 1888. The principle is clearly laid down in 3 Stark. Ev. (Pt. 4), 1049, where it is said that "although a presumption arises, in the absence of proof to the contrary, that the parties have expressed in writing the *whole* of their intention in respect of the subject-matter, and intended the written terms to operate as an agreement, yet, that presumption may be rebutted by express evidence that what was so written was intended as a mere memorandum of one part or branch only of a more general agreement, and was not intended to operate absolutely and unconditionally, or it may be shown *that a parol contract was made independently, wholly collateral to and distinct from a written one made at the same time.* In such cases, the parol evidence is used, not to *vary the terms* of the written instrument, but to show either that it is *inoperative* as an entire and independent agreement, or that it is collateral and irrelevant."

And so in 2 Taylor Ev., section 1038, after treating of the principle that excludes parol evidence where the parties have reduced their agreement to writing, the author proceeds to say, "that the rule does not prevent parties to a written contract from proving that, either contempora-

neously or as a preliminary measure, they had entered into a
distinct oral agreement on some collateral matter. Still less
does the rule exclude evidence of an oral agreement which
constitutes a condition on which the performance of the
written agreement is to depend. Nor is the rule infringed
by the admission of parol evidence, under a proper plea,
showing that the instrument is altogether *void*, or that it
*never* had any legal existence or binding force, either by
reason of forgery or fraud, or for the illegality of the sub-
ject-matter, or for want of due execution and delivery."
See *Lindley* v. *Lacy*, 17 Com. B. (N. S.) 587.

And again, the same author, in section 1049 of his work
on Evidence, says: "It is almost superfluous to observe that
the rule is not infringed by proof of any collateral parol
agreement, which does not interfere with the *terms of the
written contract*, though it may relate to the same subject-
matter. For instance, where parties to an indenture of
charter-party afterwards agreed by parol to use the ship for
a period which was to elapse before the charter-party at-
tached, it was held that this latter contract might be en-
forced by action of *assumpsit*. It would even seem, that, if
money be received by a party, under circumstances raising
an implied promise to pay it to another, or under an ex-
press promise to do so, and subsequently a deed be entered
into between these parties in order to ascertain the amount
to be paid, an action of simple contract can be sustained."

These principles have been enunciated and applied in a
great number of cases, both English and American; and
prominent among the cases where such principles have
been adopted and enforced, we may refer to *Ellis* v.
*Thompson*, 3 M. & W. 452; *Lindley* v. *Lacy*, 17 Com. B. (N.
S.) 587; *McCreary* v. *McCreary*, 5 Gill & John. 147, 157;
*Basshor* v. *Forbes*, 36 Md. 154.

The distinct agreement that the plaintiff should assume
and pay off the mortgage and take in consideration there-
for the Georgia land, the title to which proved to be ficti-

tious and nonexistent, clearly falls within the principle of the authorities to which we have referred, and does not vary or contradict the written contract of exchange; and there was therefore no error in receiving the parol evidence of such collateral independent agreement and of the fraudulent circumstances under which the plaintiff was induced to part with his money, raising an *implied assumpsit* upon which the action is based.

3. Now, with respect to the question of the admissibility of the evidence offered by the plaintiff and admitted by the court, to prove the agency and the acts and declarations of William H. Main, in the course of the transaction, from the beginning to the end of it, there would seem to be no real difficulty. If William H. Main was in fact acting as the agent for the defendants in the transaction (and of that fact there ought to be no question), then of course, his acts and declarations in relation to the subject-matter, were admissible as part, and, indeed, a very material part of the transaction. He lived with his sister, Mollie M. Main, and was engaged in the business of a real estate broker in the city of Washington; and he was the first to open the question to the plaintiff for the exchange of the Boyle farm for the Brunswick property, and took the plaintiff out to see the farm. He then took the plaintiff to the sister and introduced them, and was present during the negotiation, and was witness to the signatures of the parties to the paper-writing then made. And when the arrangement for the exchange of properties was about to be consummated, William H. Main was sent to Brunswick, N. Y., to attend to the matter, and there co-operated with his brother, Lewis C. Main, in closing up the transaction. He carried with him a blank deed purporting to be a conveyance of 5,000 acres of land in Tattnall County, State of Georgia, and which he then and there had filled up with the name of the plaintiff as grantee, and delivered the same to the plaintiff, in part execution of the contract. He also, at the same time, deliv-

livered to the plaintiff what purported to be an abstract of title of the lands in Georgia, but of which title there seems to be no record in Tattnall County; and there has been no evidence whatever that such lands could be located in that county. Both he and his brother, Lewis C. Main, however, assured the plaintiff that the title was good. The deed for the Brunswick property was made to William H. Main, and he thereupon obtained a loan of $5,000 and paid over the money to Lewis C. Main. All these facts, and many other circumstances, were before the jury; and the question, whether he was acting for and in the behalf of the defendants, was fully and fairly submitted to the jury upon the whole evidence. It would appear that the jury did not find that both defendants were liable in respect of the furniture in the house at Brunswick, that was selected for Mollie M. Main by William H. Main, and under the instructions of the court, that finding would seem to have been justifiable and proper. The question of liability of the defendants, therefore, for the furniture is eliminated from the case by the verdict of the jury, and does not require any special consideration here. But the jury have found a joint liability of the defendants in respect of the $2,000 paid for the discharge of the mortgage on the Boyle farm. In each of the instructions of the court on the part of the plaintiff, under which the jury could and must have found their verdict, the agency of William H. Main for both of the defendants must have been found to exist, before any acts or declarations of his could have been considerd in the case as binding upon the defendants. The court allowed alll the facts to come in, (sometimes found necessary in order to see the real nature and true scope of the case), and then determined and gave instructions as to the conditions and limitations under which the defendants could or could not be held liable. In this we perceive no error of which the defendants can, in reason or justice, complain in this case.

4. The exception taken to the propriety of allowing the

plaintiff to read in evidence to the jury a section of the code of the statute law of the State of Georgia, from the code of that State, can not be sustained.    The book purports to be the code of the State, and to be published by authority, and to contain the public statute law of the State, and we find it in the public libraries and in common use and recognition.    It has become the common practice of the courts, both of the United States and of the States, to require no other authentication of the public statute law of a State than the impress of the authority by which it is published, contained in the book itself.    Any other rule would subject parties to great inconvenience and unnecessary expense, and in many cases might work surprise.    There was no error, therefore, in overruling the objection to the reading of the section of the code to the jury. .

5. We have substantially covered the material questions presented on this appeal, in what we have already said in regard to the admission of evidence.    We shall, therefore, make but a brief examination of the instructions given on behalf of the plaintiff, and of the prayers for instruction refused that were offered on the part of the defendants.

The three instructions asked on the part of the plaintiff, and granted by the court—the first relating to the question of the agency of William H. Main, in effecting the exchange of properties, and his representations in respect thereof; and the second and third in relation to the assumption by the plaintiff, and the payment of the mortgage debt of $2,000, in consideration of the conveyance of the Georgia lands, and the assurance of a good title thereto by the defendants—would seem to be unobjectionable, upon the principles that we have hereinbefore stated.    The defendants asked fourteen separate instructions to the jury.    Of these, six were granted, without modification or qualification; and they would seem to embrace every question that the defendants could fairly urge in defence.    The fourth

prayer offered by them was rejected as offered, but was modified by tho court and granted in this form:

"It is incumbent upon tho plaintiff in this case, in order to be entitled to a verdict in his favor, to prove by a fair preponderance of the evidence the allegations contained in his declarations substantially as therein alleged. If, therefore, the evidence in the case fails to prove to tho satisfaction of the jury *that both of the defendants,* by falsely and fraudulently representing the title to the Georgia lands in the declaration mentioned to be good in George T. Mason, induced the plaintiff to assume the payment of two thousand dollars of incumbrance on the Boyle farm, which the defendants conveyed to tho plaintiff; and that it was in connection and in relation to the same contract and as part of the same transaction that *both said defendants,* by said false and fraudulent representations, induced the plaintiff to sell and deliver to them the personal property in the declaration mentioned, *then your verdict should be for the defendants.*"

With the limitations and qualifications clearly expressed in the instructions granted at the instance of the plaintiff, taken in connection with the fourth prayer of the defendants as modified by the court, the whole case was fully placed before the jury, but with a condition that was prejudicial to the right of the plaintiff to recover, though that condition was obviated by the verdict of the jury. The prayers of the defendants that were refused were only modified statements of the propositions embraced in the instructions that were granted; and by the instructions granted the defendants really obtained the benefit of several inconclusive and irrelevant propositions, and to which they were not entitled. We find, however, nothing that justifies the reversal of the judgment, and it is therefore affirmed.

*Judgment affirmed.*